

Nicole H. Waid, Esq.
Partner

2390 Tamiami Trail North
Suite 100
Naples, Florida 34103

Direct:  (202) 906-9572

nicole.waid@fisherbroyles.com
www.FisherBroyles.com

**CONFIDENTIAL: EXEMPT FROM FOIA**

VIA EMAIL AND FEDERAL EXPRESS
Heather H. Hunt
Clifford Rones
Chief, FARA Registration Unit
U.S. Department of Justice
National Security Division
600 E Street, N.W.
BICN - Room 1300
Washington, DC 20004

January 20, 2018

        Re:     RM Broadcasting, LLC

Dear Ms. Hunt and Mr. Rones:

Our firm represents RM Broadcasting, LLC ("RM").  We are writing in response to your letter dated December 21, 2017, regarding the determination of our client's possible obligation to register pursuant to the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. §611 et. seq. ("FARA").[1]  The responses to your inquiries are detailed below.

**I. Questions**

1. A complete statement of the current ownership and control of RM:  RM is a Delaware limited liability company, formed in January 2010.  Its 100% member is Arnold Ferolito, a United States citizen.  Mr. Ferolito is the sole member, officer, and operator of RM.  RM has no employees.

2. Description of RM's regular business and/or activity:  RM contracts with third party program providers and Federal Communications Commission ("FCC") licensees for the transmission of programming over airtime on licensed radio broadcast stations.  Such arrangements are permitted under and governed by the Communications Act of 1934, as amended, and the rules and regulations of the FCC.  RM purchases airtime from FCC licensees and resells that airtime to radio programmers; RM does not create, provide,

---

[1] The FARA Unit sent Mr. Ferolito of RM Broadcasting, LLC a letter requesting similar information on December 13, 2012.  Mr. Ferolito's counsel, Davina Sashkin of Fletcher, Heald, and Hildreth, responded to the inquiry on January 4, 2013, with the requested information.  RM was not required to register pursuant to FARA after this initial inquiry.  The current request for information is the first correspondence with the FARA Unit since the submission on January 4, 2013.

or have any direction or control over the content of the programming, and does not possess the authority to exercise editorial control over the programming content.

3. <u>Description of the activities RM has engaged in, or the services provided, by RM to Radio Sputnik, *Rossiya Segodnya*, or any other related or foreign entity</u>: Radio Sputnik creates, produces, and controls radio broadcast services, including news, public affairs and cultural programming. RM purchases airtime from Way Broadcasting, Inc. (WZHF AM), an FCC licensee, and resells that airtime to Radio Sputnik for program transmission.

4. <u>Copy of the Written Agreement</u>: A copy of the written agreement between RM and *Rossiya Segodnya* is attached.

5. <u>Copies of all communications between RM Broadcasting and Radio Sputnik, *Rossiya Segodnya*</u>: We respectfully submit that this request is overbroad, unduly burdensome, and unnecessary. The FARA Registration Unit suggests that it needs these communications to determine the nature of the relationship between RM Broadcasting and Radio Sputnik, however the letter to RM from the Department of Justice dated December 21, 2017, makes clear that the FARA Registration Unit understands RM Broadcasting's relationship with Radio Sputnik programming and WZHF AM. <u>See</u> Attachment, page 1. In addition, the relationship of the parties can be clearly determined by the responses to DOJ's questions contained within this letter and the review of the Services Agreement which sets out the contractual duties of each party.

We cannot identify any statutory authority that would require RM to produce such documents for the determination of a registration obligation. The government has the right to inspect the "books of account and other records" of an "agent of a foreign principal registered" under the FARA statute pursuant to 22 USC §615. RM is not registered under FARA and objects to any determination that its activities can be classified as actions taken on behalf of a foreign principal. Finally, we respectfully submit that RM has a right against unreasonable search and seizure and this request appears to be an attempt by the government to subterfuge that Constitutional right.

6. <u>Additional relevant information</u>: In his letter, Mr. Rones notes that Reston Translator LLC registered under FARA on November 18, 2017, in connection with activities that "appear similar to those at issue here; namely its translating of radio programming, marketed as "Radio Sputnik," on behalf of *Rossiya Segodnya* to an FM HD-2 radio station (105.5 MHz) in the Washington D.C. area." First, Reston Translator LLC operates a radio transmission facility that rebroadcasts radio programming; RM does not operate a radio transmission facility, but is a purchaser and reseller of radio airtime. Second, the reference to Reston Translator LLC's registration appears to be slightly disingenuous. The only reason that Reston Translator LLC registered was because DOJ mandated that the company register under FARA and the company feared the prosecutorial ramifications of any non-compliance with that mandate. Reston Translator LLC strongly disagreed with the FARA Registration Unit's determination that the company was obligated to register pursuant to FARA. Reston Translator stated its objection in a nine (9) page letter to the FARA Unit and made it clear that the company objected to DOJ's analysis. This does not qualify as strong precedent for the requirement to register and this analysis should not be applied to RM. Finally, Mr. Rones asserts in his letter that the FARA Registration Unit's request for information is "consistent

with this longstanding practice." Whereas the process to request information for a registration obligation determination may be a longstanding practice, the FARA statute has not been historically applied to broadcasting or other non-print media outlets. It appears that this "new" interpretation of the statute will have far-reaching ramifications for other news and media sources, such as internet providers, multichannel video programmer distributers as Comcast, Time Warner/Charter Communications and FiOS, as well as larger broadcasters which produce their own content.

## II. Additional Information

1. Relationship between RM Broadcasting and *Rossiya* Segodnya: As discussed above, RM purchases airtime from Way Broadcasting, Inc. (WZHF AM), an FCC licensee, and resells that airtime to Radio Sputnik for program transmission.

2. Sources of programming content that RM provides to WZHF. Radio Sputnik is the sole source of the programming content provided by RM to Way Broadcasting, Inc. Radio Sputnik possesses absolute authority and control over the content of the programming and exercises complete editorial control over the programming content.[2] RM does not possess any direction or control over the content of the programming, RM does not possess any editorial control, and RM does not operate under the direction or control of Radio Sputnik. RM has merely entered into a commercial business transaction whereby RM is the purchaser and reseller of airtime.

3. Distribution of any foreign based programming other than Radio Sputnik on WZHF: RM entered into a Services Agreement with Radio Sputnik for the transmission of programming over airtime purchased from FCC licensee, Way Broadcasting, Inc. Way Broadcasting, Inc. broadcasts/distributes the programming via its licensed radio station WZHF AM. RM currently does not have any other Services Agreements.

4. Prior to November 27, 2017, did RM receive any funding from Radio Sputnik, *Rossiya Segodnya,* or any other related or foreign entity?: RM received monetary deposits from Radio Sputnik, *Rossiya Segodnya* on November 24, 2017, pursuant to the contractual terms of the Services Agreement. RM did not receive any additional monetary payments from Radio Sputnik, *Rossiya Segodnya* prior to that date. RM received contractual payments from Voice of Russia pursuant to a prior Services Agreement for the transmission of airtime to an FCC licensee. This contract was previously provided to the FARA Registration Unit in January 2013.

5. What date did RM cease distributing Voice of Russia broadcasts?: RM entered into a Services Agreement with Voice of Russia for the transmission of airtime between the programmer and an FCC licensee. The contract was cancelled on July 1, 2014.

---

[2] Radio Sputnik's control is subject to Way Broadcasting, Inc.'s preemptive authority to ensure compliance with FCC regulations.

### III. Conclusion

RM has responded fully to the Department's inquiries, since receipt of the initial inquiry in December 2013, and continues to cooperate with additional information requests. However, it is apparent that the contractual duties found within the terms of the Services Agreement do not fall within the statutory definition of a foreign agent pursuant to 22 USC §611(c). According to the statute, the term "agent of a foreign principal" means:

> **"(1)** any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—
>
> **(i)** engages within the United States in political activities for or in the interests of such foreign principal;
>
> **(ii)** acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
>
> **(iii)** within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or
>
> **(iv)** within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States;…"

RM does not act as an agent, representative, employee, or servant of Radio Sputnik, *Rossiya Segodnya*. The contractual relationship between the two parties solely consists of the availability of radio airtime between Radio Sputnik and an FCC licensee. Quite simply, RM has entered into a commercial business transaction whereby RM is a purchaser and reseller of radio airtime. RM is not subject to the direction or control of Radio Sputnik. Radio Sputnik has absolute control over the content of its radio broadcasts, including creative and editorial control. RM has no control over content, has no editorial control over programming, and does not broadcast the programming from its facilities. RM does not engage in political activities, nor does RM or Mr. Ferolito act as public relations counsel, publicity agent, information-service employee, or political consultant for or in the interests of a foreign principal. RM does not sponsor in any way the content of Radio Sputnik's broadcasting and it does not promote Russian interests. RM entered into a contractual relationship with Radio Sputnik to transmit its programming to an FCC licensee and RM was paid pursuant to the fulfillment of its contractual obligations – this is the only relationship that exists between the two entities. Moreover, RM does not solicit, collect, disburse, or dispense contributions, loans, money or other things of value for or in the interest of a foreign principal. RM is

paid pursuant to its transmission services as defined within the Services Agreement. For all of these reasons, RM's business activities do not fall within the definition of the statute.[3]

The attached Services Agreement corroborates this analysis. The following clause found within the Services Agreement clearly states that the contractual relationship does **not** create a partnership or agency relationship between the parties:

> "*Section 18: No Partnership or Agency*: Nothing in this Agreement is intended to or shall operate to create a partnership between the Parties or to authorize either party to act as an agent for the other. Furthermore, neither Party shall have authority to act for or on behalf of or otherwise to bind the other in anyway (including, but not limited to, the making of any representation or warranty, the assumption of any obligation or liability and the exercise of any right or power)."

This contractual clause directly contradicts the government's agency theory.

Furthermore, the contractual duties of each party are explicitly described within the Services Agreement. These contractual provisions substantiate RM's position that it does not have any control over the content of the radio broadcasts:

> "*Section 6.1(d): Content.* The Client [*Rossiya Segodnya*] shall be liable for the content of the radio programs and shall hold the Contractor [RM] harmless of any documented actual losses, if the Contractor is able to prove that this loss results from the broadcasting of Radio

---

[3] Assuming, *arguendo*, that DOJ concludes that RM's Services Agreement with Radio Sputnik creates an agency relationship, there is a strong argument to be made that RM is not an "agent of a foreign principal" pursuant to 22 U.S.§ 611(d) which states that an "agent of a foreign principal" does *not include* "any news or press service or association organized under the laws of the United States or of any State or other place subject to the jurisdiction of the United States…so long as it is at least 80 per centum beneficially owned by, and its officers and directors, if any, are citizens of the United States, and such news or press service or association, newspaper, magazine, periodical, or other publication, is not owned, directed, supervised, controlled, subsidized, or financed, and none of its policies are determined by any foreign principal…" RM is a Delaware limited liability company, formed in January 2010, that contracts with third parties and Federal Communications Commission ("FCC") licensees for the transmission of programming over airtime between the programmers and the licensed radio broadcast stations. Its 100% member is Arnold Ferolito, a United States citizen. Mr. Ferolito is the sole member, officer and operator of RM. RM has no employees. RM is not owned, directed, supervised, controlled, subsidized or financed by a foreign principal, and none of its policies are determined by any foreign individual or entity. Although the statute does not specifically mention radio broadcasts or activities related to radio broadcasting, more recent interpretations of the First Amendment would indicate that these newer forms of media would fall within the spirit of the exception.

Programs in breach of applicable law, not exceeding the amount mentioned in Clause 7.3 of this Agreement."

"***Section 6.1(e):*** The Client [*Rossiya Segodnya*] further agrees that, throughout the term of this Agreement, the Client shall comply with all laws, rules, regulations, policies and procedures including, but not limited to, the FCC's technical, political broadcasting, obscenity and indecency regulations, rules for placing sponsorship materials and any other applicable norms regarding Radio Programs. The Client shall make reasonable efforts to ensure that the content of the Radio Programs complies with the applicable laws."

"***Section 6.2(c)(vi):*** Contractor [RM] shall broadcast/transmit radio programs (parts/fragments) without abridging them or any additions, editing, duplicating or other actions detrimental to the integrity of the Radio Programs (their parts/fragments). The Radio Programs (their parts/fragments) should not be interrupted by advertising. The Parties agree that this provision is a material term hereof."

These contractual provisions ensure that Radio Sputnik maintains complete control over the content of all radio broadcasts and RM has no authority to exercise creative or editorial control over the radio programming. RM respectfully submits that its contractual duties pursuant to the Services Agreement with Radio Sputnik do not fall within the statutory definition of "agent of a foreign principal" pursuant to 22 USC §611(c) and, therefore, RM is not obligated to register under FARA.

Please feel free to contact us with any further questions.

Best regards,

*[signature]*

Nicole H. Waid, Esq., Partner