UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RM BROADCASTING, LLC<br>101 Waters Edge Drive<br>Jupiter, Florida 33477<br><br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW Washington, DC 20530-0001<br><br>    *Defendant and Counterclaim Plaintiff.* | Case No. 9:18-cv-81418-RLR |

## DEFENDANT UNITED STATES DEPARTMENT OF JUSTICE'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM FOR INJUNCTIVE RELIEF

The United States Department of Justice ("the Department"), by and through its undersigned counsel, hereby submits its Answer to the Complaint for Declaratory Judgment (Dkt No. 1) ("Complaint" or "Complaint for Declaratory Judgment") brought by RM Broadcasting, LLC ("RM Broadcasting"). Additionally, the Department asserts a counterclaim for injunctive relief against RM Broadcasting. With respect to the allegations made in the Complaint for Declaratory Judgment, the Department hereby denies each and every allegation in the Complaint except as may be expressly and specifically admitted in this Answer. The Department answers the numbered and unnumbered paragraphs in the Complaint as follows

### NATURE OF THE ACTION

1. The Department admits that RM Broadcasting brought this action for declaratory judgment to determine RM broadcasting's legal obligations to register as an agent of a foreign

principal within the meaning of the Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.* ("FARA" or "the Act"). As described below, the Department also counterclaims for injunctive relief requiring RM Broadcasting to register as an agent of a foreign principal under FARA.

## PARTIES, JURISDITION, AND VENUE

2. The Department admits that RM Broadcasting is a Delaware corporation with its principal place of business in Jupiter, Florida. The Department lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2 of the Complaint.

3. The Department admits that the National Security Division is a division within the United States Department of Justice. The Department admits that the Counterintelligence and Export Control Section and the FARA Registration Unit reside within the National Security Division. The Department admits that it is an agency of the United States Government. The Department denies that the FARA Registration Unit is "tasked with registering foreign agents." The FARA Registration Unit is responsible for the administrative enforcement of FARA. Under FARA, agents of foreign principals are themselves required to register with the FARA Registration Unit.

4. The allegations in this paragraph constitute conclusions of law, to which no response is required.

5. The allegations in this paragraph constitute conclusions of law, to which no response is required.

## GENERAL ALLEGATIONS

6. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

8. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint.

9. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12. The Department lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint. The allegation that RM Broadcasting engages in the "business of leasing broadcast airtime" is vague and may not fully characterize the nature of RM Broadcasting's relationship with Federal Communications Commission ("FCC") licensees.

13. Denied.

14. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17. Based on exhibits attached to the Complaint, the Department admits that Arnold Ferolito, acting on behalf of RM Broadcasting, sent written correspondence to Sputnik International ("Sputnik") in July 2016. The Department denies the allegations in paragraph 17 of the Complaint to the extent they characterize the correspondence as an offer to "sell broadcast airtime." The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegation that Mr. Ferolito sent written correspondence to others.

18. The Department admits that Sputnik is a radio broadcast service established by the Federal State Unitary Enterprise Rossiya Segodnya International Information Agency ("Rossiya Segodnya"), which is owned and controlled by the Russian government. The Department denies the remaining allegations in paragraph 18 of the Complaint.

19. Based on exhibits attached to the Complaint, the Department admits that Mr. Ferolito sent additional correspondences to Sputnik and that Rossiya Segodnya responded in November 2016 by indicating that it was considering RM Broadcasting's proposal along with those of others. The Department lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19.

20. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21. Based on Exhibit A of the Complaint, the Department admits that RM Broadcasting entered into a Services Agreement in November 2017.

22. Denied.

23. Denied.

24. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25. The Department denies that RM Broadcasting "maintain[s] complete transparency and educate[s] the American public of the origins of the broadcast." The Department lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 25 of the Complaint.

26. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27. Denied.

28. The Department admits that the copy of the Services Agreement attached to the Complaint includes a clause titled "Section 18: No Partnership or Agency," the content of which is recited in the Complaint. The Department denies the remaining allegations in paragraph 28 of the Complaint.

29. The Department admits that the copy of the Services Agreement attached to the Complaint includes section 6.1(d), the content of which is recited in the Complaint. The Department denies the remaining allegations in paragraph 29 of the Complaint.

30. The Department admits that the copy of the Services Agreement attached to the Complaint includes section 6.1(e), the content of which is recited in the Complaint. The Department denies the remaining allegations in paragraph 30 of the Complaint.

31. The Department admits that the copy of the Services Agreement attached to the Complaint includes section 6.2(c)(vi), the content of which is recited in the Complaint. The Department denies the remaining allegations in paragraph 31 of the Complaint..

32. Admitted.

33. Denied.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. The Department admits that RM Broadcasting sent a written correspondence on July 27, 2018, responding in writing to the FARA Registration Unit's demand that RM Broadcasting register as a foreign agent pursuant to FARA and that the letter disagreed with the Government's interpretation of the definition of "agent of a foreign principal." The Department denies the remaining allegations in paragraph 38 of the Complaint.

39. The Department admits that the Government, through the FARA Registration Unit, continues to demand that RM Broadcasting register as a foreign agent under FARA and that RM Broadcasting has taken the position that it has no legal obligation to register. The Department denies the remaining allegations in paragraph 39 of the Complaint.

40. Admitted.

41. Admitted.

42. The Department admits that foreign agents who are required to register pursuant to FARA are required to publicly file all written agreements and the terms and conditions of each oral agreement by reason of which the registrant is an agent of a foreign principal under 22 U.S.C. § 612(a)(4). The Department denies the remaining allegations in paragraph 42 of the Complaint.

43. Admitted.

44. The Department admits that, for purposes of FARA, the Government looks to the definition of "control" in 28 C.F.R. § 5.100(b), which states: "As used in the Act, the term *control* or any of its variants shall be deemed to include the possession or the exercise of the power, directly or indirectly, to determine the policies or activities of a person, whether through the ownership of voting rights, by contract, or otherwise." The Department denies the remaining allegations in paragraph 44 of the Complaint.

45. Denied.

46. Denied.

47. Denied.

48. The Department admits that paragraph 48 contains an accurate description of RM Broadcasting's position, but denies that RM Broadcasting's position is correct.

49. Denied. The Department does not understand what RM Broadcasting means when it states that all "conditions precedent to the filing of this lawsuit have occurred or have been waived."

## COUNT I
## DECLARATORY JUDGMENT

The Department incorporates by reference paragraphs 1 through 49 of this Answer as if fully set forth herein.

50. The Department admits that this purports to be an action by RM Broadcasting for declaratory judgment against the U.S. Government under 28 U.S.C. § 2201.

51. The Department admits that RM Broadcasting is requesting a declaratory judgment from this Court that it is not legally obligated to register under FARA. The government denies that RM Broadcasting does not fall within the definition of an "agent of a

7

foreign principal" under FARA and that RM Broadcasting is not legally obligated to register under FARA.

52. The Department lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

53. Paragraph 53 of the Complaint attempts to state facts about a declaratory judgment that do not exist. Accordingly, the Department denies the allegations in paragraph 53 of the Complaint.

54. Admitted.

55. Admitted.

56. Admitted.

**WHEREFORE**, the Department respectfully requests that the Court deny RM Broadcasting's request for a declaratory judgment. Each averment and/or allegation contained in RM Broadcasting's Complaint that is not specifically admitted herein is hereby denied.

## COUNTERCLAIM FOR INJUNCTIVE RELIEF

Counterclaim Plaintiff, the United States Department of Justice, by and through its undersigned counsel, asserts the following Counterclaim against Counterclaim Defendant RM Broadcasting:

1. This statutory injunction action is brought under the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, to compel RM Broadcasting to submit a true and complete registration statement, and supplements thereto, to the Attorney General, as required by Section 2(a) of FARA, 22 U.S.C. § 612(a), by virtue of its acting as an agent of either of its foreign principals: Rossiya Segodnya and the government of the Russian Federation.

2. Under the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et. seq.*, Rossiya Segodnya is not entitled to hold or control radio broadcast licenses in the United States. Under 47 U.S.C. § 310(a), U.S. broadcast licenses "shall not be granted to or held by any foreign government or the representative thereof." Similarly, 47 U.S.C. § 310(b) prohibits corporations organized under the laws of a foreign government from holding a U.S. broadcast license.

3. In light of those restrictions, Russia's state-owned news agency Rossiya Segodnya contracted with RM Broadcasting to provide for the AM radio broadcast of Russia's state-run, English-language radio channel, Radio Sputnik, in Washington D.C. Per a Russian presidential decree to December 9, 2013, the core business of Rossiya Segodnya is "the coverage of Russian state policy and public life in the Russian Federation." On Certain Measures to Raise Operational Effectiveness of State-Owned Mass Media, Presidential Decree § 4 (Dec. 9, 2013).

4. Through its 2017 contract with Rossiya Segodnya, RM Broadcasting is obligated to provide for the 24-hour, 7-days-a-week broadcast of Radio Sputnik in Washington D.C., including by receiving the programming from a satellite prior to broadcast. Aside from five

9

seconds per hour for station identification, Rossiya Segodnya has complete control over the content of those broadcasts, which RM Broadcasting has no right to alter.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1345 and 22 U.S.C. § 618(f).

6. RM Broadcasting has availed itself of this forum and is therefore subject to personal jurisdiction in this District in this action.

7. Venue in this district is proper under 28 U.S.C. § 1391(b).

## The Parties

8. The United States Department of Justice is an agency of the United States Government located at 950 Pennsylvania Ave, N.W., Washington, D.C. 20530. The FARA Registration Unit operates within the Counterintelligence and Export Control Section of the Department's National Security Division.

9. RM Broadcasting is a Delaware corporation with its principal place of business located at 101 Waters Edge Drive, Jupiter, Florida 33477.

10. RM Broadcasting entered into a contract with Rossiya Segodnya in November 2017 pursuant to which RM Broadcasting has provided for the broadcast of Radio Sputnik over public airwaves since December 2017.

## FARA

11. Among the chief purposes of FARA is to inform the American public of the activities of agents in the United States working on behalf of foreign principals to influence U.S. Government officials or the American public with reference to the domestic or foreign policies of the United States, or with reference to the political or public interests, polices, or relations of a

foreign country or a foreign political party. Those operating as agents of a foreign principal in the United States must register with the Attorney General of the United States and make certain disclosures in the registration filings concerning the relationship with the foreign principal and activities undertaken within the United States on the foreign principal's behalf. 22 U.S.C. § 612.

12. Under FARA, the term "foreign principal" includes "a government of a foreign country" and "a partnership, association, corporation, organization, or other combination of persons organized under the laws of or having its principal place of business in a foreign country." 22 U.S.C. § 611(b).

13. FARA defines an "agent of a foreign principal," in pertinent part, as "any person who acts as an agent . . . or . . . at the order, request, or under the direction or control" of a "foreign principal" and "who directly or through another person . . . acts within the United States as a . . . publicity agent, [or] information-service employee . . . for or in the interests of such foreign principal." 22 U.S.C. § 611(c)(1)(ii).

14. FARA defines a "publicity agent" to include "any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publication by means of advertising, . . . lectures, broadcasts, . . . or otherwise." 22 U.S.C. § 611(h). The Act defines "information-service employee" to include "any person who is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political, industrial, employment, economic, social, cultural, or other benefits, advantages, facts, or conditions of any country other than the United States or of any government of a foreign country or of a foreign political party or of a partnership, association, corporation, organization, or other combination of individuals organized under the laws of, or having its principal place of business in, a foreign country." 22

U.S.C. 611(i).  FARA does not limit the speech or political activities of its registrants, who are free to advance whatever message they wish, provided they disclose their relationship to their foreign principal and adhere to the recordkeeping and other requirements of the statute.

15. Pursuant to FARA, an individual or entity that has a registration obligation has a continuing duty to register, even if the conduct subject to FARA has ceased.  22 U.S.C. §§ 612(a), 618(e).

## Rossiya Segodnya and Sputnik

16. Rossiya Segodnya is a Russian media organization incorporated under the laws of the Russian Federation with a registered office in Moscow, Russia.  Rossiya Segodnya, therefore, is a foreign principal under FARA.  *See* 22 U.S.C. § 611(b)(3).

17. Rossiya Segodnya is also a foreign principal because it is part of the Russian government.  *See* 22 U.S.C. § 611(b)(1).  As noted in paragraph 3, *supra,* Russian president Vladimir Putin created Rossiya Segodnya by a decree issued on December 9, 2013, that dissolved the state-owned news agency RIA Novosti and replaced it with Rossiya Segodnya.

18. Rossiya Segodnya created the Sputnik brand on November 10, 2014.  *About Us*, Sputnik International, https://sputniknews.com/docs/about/.  Sputnik describes itself as "a news agency whose products include news feeds . . . [and] radio broadcasts."  *Id.*  Sputnik is not a registered corporate entity in the United States.  Rather, Sputnik operates in Washington, D.C., through RIA Global, which is responsible for recruiting and hiring the "Sputnik" personnel who work out of Washington, D.C.  Press credentials issued to "Sputnik" writers in Washington, D.C., associate those writers with RIA Global.  RIA Global has registered as an agent of a foreign principal under FARA.

19. Rossiya Segodnya uses it news outlets, including Sputnik, to disseminate information to audiences in the United States about Russia and to advance Russian interests. Vladimir Putin's decree creating Rossiya Segodnya stated that Rossiya Segodnya's primary business is "the coverage of Russian state policy and public life in the Russian Federation." On Certain Measures to Raise Operational Effectiveness of State-Owned Mass Media, Presidential Decree § 4 (Dec. 9, 2013). Rossiya Segodnya was created "for reporting Russian government policies and Russian public life abroad." *It Is Necessary to Restore Fair Treatment Towards Russia – Dmitry Kiselyov*, The Voice of Russia (Dec. 9, 2013) (on file with the Department of Justice) (previously posted at https://sputniknews.com/voiceofrussia/news/2013_12_09/It-is-necessary-to-restore-fair-treatment-towards-Russia-Dmitry-Kiselyov-4500/).

20. Rossiya Segodnya's own English-language style guide shows how the content its news outlets create and disseminate is designed to advance positions of the Russian Federation. The style guide tells reporters:

> It is . . . important that our journalists maintain allegiance to the larger national and public interest. Our main goal is to inform the international audience about Russia's political, economic and ideological stance on both local and global issues. To this end, we must always strive to be objective but we must also stay true to the national interest of the Russian Federation.

**RM Broadcasting Broadcasts Radio Sputnik for Rossiya Segodnya**

21. RM Broadcasting provides for the broadcasting of Radio Sputnik—Sputnik's radio outlet—on AM radio channel 1390 in Washington, D.C.

22. According to a Sputnik article titled "All We Hear is Radio Sputnik: Russians Invade 1390 AM Radio Station in DC," Radio Sputnik sought AM broadcasting of its content in addition to FM broadcasting from nearby Northern Virginia because "AM radio has a wider range than FM, meaning that more viewers will be exposed to alternative perspectives on current events that you won't hear anywhere else." *All We Hear is Radio Sputnik: Russians Invade 1390*

*AM Radio Station in DC* (Nov. 27, 2017), https://sputniknews.com/us/201711271059483449-radio-sputnik-am-station-opens/.

23.     In November 2017, RM Broadcasting entered in to a "Services Agreement" with Rossiya Segodnya titled "In Respect of Broadcasting and Transmission of Rossiya Segodnya Programs." A copy of the Services Agreement is attached as Exhibit A to RM Broadcasting's Complaint and is incorporated herein by reference.

24.     The Services Agreement obligates RM Broadcasting to provide for the broadcasting of Rossiya Segodnya's radio programs—i.e., Radio Sputnik. RM Broadcasting is responsible for receiving the radio programs sent by Rossiya Segodnya via satellite. Services Agreement ¶ 2.3. The Services Agreement obligates RM Broadcasting "to provide the Services to [Rossiya Segodnya] for the broadcasting/transmission of Radio Programs . . . on a daily basis round-the-clock (except for 5 . . . seconds at the top of every hour [for] broadcast of station identification announcements inserted by [RM Broadcasting] . . .)." *Id.* ¶ 2.1. "[RM Broadcasting] must provide uninterrupted quality operation of the Equipment/technical facilities used for the broadcasting/transmission of [Rossiya Segodnya's] Radio Programs." *Id.* ¶ 4.7; *see also id.* ¶ 4.9 (RM Broadcasting "shall take reasonable measures to eliminate any defects or failure of the Equipment/technical facilities hindering normal operation"); *id.* ¶ 4.10 (requiring RM broadcasting to perform scheduled maintenance work on broadcast equipment not more than once per month at specified times, after coordinating with Rossiya Segodnya). RM Broadcasting has no right to alter the content provided by Rossiya Segodnya prior to broadcast. *See* Services Agreement ¶¶ 2.1, 2.4, 6.2(c)(vi).

25.     The Services Agreement specifies important details of RM Broadcasting's broadcasting activities. For example, section 2.1 states that Rossiya Segodnya's radio programs

"shall be transmitted in Washington DC, USA at a frequency of 1390 kHz [(kilohertz)] in the AM band via a transmitter, maximum 9 kW [(kilowatts)] by day and 1 kW by night."

26. The brief station identification required by the FCC does not meet FARA's notification requirements. The FCC requires an hourly station identification consisting of "the station's call letters immediately followed by the community or communities specified" in the station's license. 47 C.F.R. § 73.1201. FARA, on the other hand, requires informational materials distributed for a foreign principal to be accompanied by "a conspicuous statement that the materials are distributed by the agent on behalf of the foreign principal, and that additional information is on file with the Department of Justice." 22 U.S.C. § 614(b). Although RM broadcasting purports to provide some indication that the programming it broadcasts is "provided by International News Agency Rossiya Segodnya," Compl. ¶ 25, that notice is inadequate under FARA. Moreover, in the absence of the requested relief, RM would be free to stop providing any more notice than what the FCC requires.

27. Although the FCC license for broadcasting on AM 1390 is owned by Way Broadcasting Licensee LLC ("WBL"), RM Broadcasting is the entity contractually obligated to provide broadcasting services to Rossiya Segodnya. The Services Agreement states that RM Broadcasting "must provide uninterrupted quality operation of the Equipment/technical facilities used for the broadcasting/transmission of [Rossiya Segodnya's] Radio Programs." Services Agreement ¶ 4.7. Moreover, the Services Agreement provides that "[RM Broadcasting] shall be responsible for the Station's compliance with all applicable provisions of the Communications Act, the rules, regulations, policies and procedures of the FCC, and all other applicable laws." Services Agreement ¶ 6.2(d).

15

28. Through the Services Agreement, Rossiya Segodnya even controls how often and when RM Broadcasting can perform maintenance work on broadcasting equipment, in order to ensure its content reaches as broad an audience as possible. Paragraph 4.10 states that "[RM Broadcasting] shall perform scheduled maintenance work on the Equipment as needed, but not more than once (1) in a month and only from 1:00 a.m. to 5:00 a.m., subject to prior coordination with [Rossiya Segodnya] in writing." If a shutdown is required "in order to prevent an emergency," RM Broadcasting must "endeavor to use other equipment similar in features and quality during any recovery work on the [broadcasting] Equipment in order to ensure uninterrupted broadcasting of [Rossiya Segodnya's] Radio Programs." Services Agreement ¶ 4.12.

29. All expenses incurred for broadcasting Rossiya Segodnya's radio programing are the responsibility of Rossiya Segodnya. The Services Agreement states that "[t]he consideration payable to [RM Broadcasting] shall include all expenses that were or will be incurred by [RM Broadcasting] in connection with the Services, including taxes and duties or any other mandatory contributions." Services Agreement ¶ 5.6

### RM Broadcasting's Obligations to Register under FARA

30. By broadcasting Radio Sputnik at the direction and control of Rossiya Segodnya, RM Broadcasting "engages directly [and] indirectly in the publication or dissemination of oral . . . or matter of any kind, including publication by means of . . . . broadcasts" and therefore serves as a "publicity agent" for Rossiya Segodnya and the government of the Russian Federation. 22 U.S.C. § 611(h).

31. In addition, certain of Radio Sputnik's programming concern "accounts, descriptions, information or data with respect to the political, industrial, employment, economic,

social, cultural, or other benefits, advantages, facts or conditions" of a foreign country or its government—namely Russia. RM Broadcasting, therefore, serves as an "information-service employee" for Rossiya Segodnya and the government of the Russian Federation by "furnishing, disseminating, or publishing" those programs. 22 U.S.C. § 611(i).

32. Under the terms of the Service Agreement, RM Broadcasting is the party responsible to Rossiya Segodnya for broadcasting its content. RM Broadcasting utilizes WBL's license for those broadcasts and may contract with WBL to perform services for RM Broadcasting. WBL, however, has no contractual obligations to Rossiya Segodnya. RM Broadcasting, therefore—not WBL—has an obligation to register as an agent of a foreign principal under FARA.

33. RM Broadcasting is the only U.S. entity responsible to its foreign principals for broadcasting those foreign principal's content in the United States. Were RM Broadcasting not required to register, there would be no U.S. entity required to register under FARA in connection with Radio Sputnik, and Rossiya Segodnya, the Russian Federation, and other foreign principals could subvert FARA's public disclosure requirements, as well as statutory limitations on foreign ownership of broadcasting facilities, simply by contracting broadcasting responsibilities to U.S. entities.

34. Registration under FARA would not require RM Broadcasting or Rossiya Segodnya to alter the content of any broadcasts. Rather, registration would require RM Broadcasting to include a more fulsome station identification indicating that broadcast content is distributed on behalf of RM Broadcasting's foreign principals and that additional registration information is on file with the Department. 22 U.S.C. § 614. Registration also would, among other things, require RM Broadcasting to make disclosures of its financing, *id.* § 612(a)(5), and

17

file copies of information transmitted on behalf of its foreign principals, *id.* § 614(a). The public filing of such information effectuates FARA's purposes of informing the American public of the activities of agents of foreign principals to influence U.S. Government officials or the American public with reference to the political or public interests, policies, or relations of a foreign country or foreign political party. With regard to RM Broadcasting in particular, the information filed pursuant to registration under FARA will, for example, assist academics, the U.S. Government, and others who study Russian influence operations. Registration will also authorize inspections by the U.S. Government to ensure compliance with FARA's requirements.

### RM Broadcasting's Failure to Register under FARA

35. By letter dated June 21, 2018, the Department of Justice advised RM Broadcasting of its obligation to register under FARA as an agent for Rossiya Segodnya, which the letter identified as part of the Russian government. The letter gave RM Broadcasting 30 days to effect a registration. After seeking and obtaining a one-week extension, RM Broadcasting responded by letter on July 27, 2018, seeking reconsideration by the Department.

36. Department of Justice personnel met with RM Broadcasting and its counsel on September 5, 2018, to discuss the Department's determination that RM Broadcasting must register under FARA. RM Broadcasting agreed to notify the Department by October 1, 2018, whether it would register under FARA. The Department subsequently extended that deadline to October 19, 2018.

37. On October 19, 2018, RM Broadcasting, through its counsel, notified the Department that it would not register under FARA and that it had filed a Complaint for Declaratory Judgment in this Court.

## COUNT 1
### (Injunction under 22 U.S.C. § 618(f))

38. The Department realleges and incorporates by reference the allegations in paragraphs 1 through 37 of these Counterclaims as if fully set forth herein.

39. The Department has alleged in this action that RM Broadcasting is required to register as an agent of a foreign principal under FARA.

40. The Department has informed RM Broadcasting of its obligation to register under FARA. RM Broadcasting, however, has declined to register, choosing instead to file this action for declaratory judgment.

41. The Department is entitled to a mandatory injunction pursuant to 22 U.S.C. § 618(f) requiring RM Broadcasting to register as an agent of a foreign principal under FARA.

### Prayer for Relief

WHEREFORE, Defendant and Counterclaim Plaintiff the United States Department of Justice respectfully requests that this Court enter judgment against Plaintiff and Counterclaim Defendant RM Broadcasting with respect to all relief requested in the Counterclaim, including the following:

a) dismissing RM Broadcasting's Complaint for Declaratory Judgment in its entirety, with prejudice;

b) entering a permanent injunction under 22 U.S.C. § 618(f) requiring RM Broadcasting to submit a true and complete registration statement and supplements thereto as required pursuant to Section 2(a) of the Foreign Agents Registration Act, 22 U.S.C. § 612(a); and

    c)      such other and further relief as the Court may deem just and proper.

Dated: December 31, 2018            Respectfully submitted,

ARIANA FAJARDO ORSHAN
United States Attorney

JOHN C. DEMERS
Assistant Attorney General
National Security Division
U.S. Department of Justice

/s/ Matthew J. Feeley
Nicholas Hunter
Trial Attorney
U.S. Department of Justice
National Security Division
Counterintelligence and Export Control Section
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Matthew J. Feeley
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street, Third Floor
Miami, FL 33132