UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

RM BROADCASTING, LLC,                          Case No. 9:18-cv-81418-RLR

      Plaintiff/Counter-Defendant,

v.

UNITED STATES DEPARTMENT
OF JUSTICE,

      Defendant/Counter-Plaintiff.

_____/

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff/Counter-Defendant, RM Broadcasting, LLC ("**RM Broadcasting**"), through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(c), hereby files its Motion for Judgment on the Pleadings and Incorporated Memorandum of Law against Defendant/Counter-Plaintiff, United States Department of Justice (the "**Department**") [D.E. 13].

## I.      INTRODUCTION

The central question raised by the parties' respective pleadings is whether RM Broadcasting is an agent of a foreign principal, such that RM Broadcasting is required to register as a foreign agent within the meaning of the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.* ("**FARA**"). On the face of the pleadings, it is abundantly clear that the Department's singular justification for requiring RM Broadcasting's registration is a written contract between RM Broadcasting, on the one hand, and Rossiya Segodnya, the purported foreign principal, on the other hand.

Simply put, the written contract on its face is insufficient to establish a principal-agent relationship. The contract – which is the sole justification alleged in the Department's

Counterclaim for Injunctive Relief (the "**Counterclaim**") for demanding that RM Broadcasting register as an agent of a foreign principal under FARA – reflects a purely arms-length, commercial transaction whereby RM Broadcasting resold AM-frequency radio broadcast rights at a profit. Importantly, the written contract expressly disclaims the formation or existence of any principal-agency relationship whatsoever.

Other than the aforementioned allegations, there are absolutely no facts alleged in RM Broadcasting's Complaint for Declaratory Relief (the "**Complaint**") or the Department's Counterclaim alleging that RM Broadcasting acted as an agent of a foreign principal at any time material to this action. Since the written contract alone is factually and legally insufficient to establish an agency relationship, the allegations of the pleadings demonstrate that RM Broadcasting is not an agent of a foreign principal and, accordingly, RM Broadcasting is not obligated to register under FARA.

As such, RM Broadcasting is entitled to judgment on the pleadings in its favor as to the allegations of its Complaint and the Department's Counterclaim because no issue of material fact remains unresolved, and RM Broadcasting is entitled to judgment as a matter of law.

## II.      BACKGROUND

### A.      *RM Broadcasting's Complaint*

The Complaint alleges that in 2010 Arnold Ferolito ("**Mr. Ferolito**") founded RM Broadcasting, a company engaging in the business of leasing broadcast airtime. Complaint at ¶ 12. RM Broadcasting is in the business of purchasing airtime from Federal Communications Commission ("**FCC**") licensees, who transmit programming on licensed radio broadcast stations, and reselling that airtime to radio programmers pursuant to commercial service agreements. *Id*. at

¶ 13.  As alleged in the Complaint, RM Broadcasting does not participate in, own, control, operate, or have any decision-making authority whatsoever with respect to the content of any programming. Moreover, RM Broadcasting does not own any broadcasting facilities.  *Id*. at ¶ 14.

The Complaint alleges that in July 2016, Mr. Ferolito, acting on behalf of RM Broadcasting, sent written correspondence to Sputnik International ("**Sputnik**"), among others, regarding RM Broadcasting's offer to sell broadcast airtime for programming distribution.  *Id*. at ¶ 17.  Sputnik is a news agency, news website platform, and radio broadcast service established by Rossiya Segodnya, which is a Russian Federation government-owned news agency.  *Id*. at ¶ 18.  After receiving no response, Mr. Ferolito sent numerous additional correspondences to Sputnik setting forth amendments to pricing.  *Id*. at ¶ 19.  The Complaint alleges that in November 2016, Rossiya Segodnya responded by indicating that Rossiya Segodnya was considering RM Broadcasting's offer alongside proposals from other competitors.  *Id*.  In November 2017, approximately one year later, Rossiya Segodnya communicated that RM Broadcasting had beat out all of its competitors.  *Id*. at ¶ 20.

As alleged in the Complaint, in November 2017, RM Broadcasting and Rossiya Segodnya entered into a Services Agreement.  *Id*. at ¶ 21.  A copy of the Services Agreement is attached to the Complaint as **Exhibit "A**."  Pursuant to the Services Agreement, RM Broadcasting resold to Rossiya Segodnya commercial radio airtime on WZHF 1390 AM.  *Id*. at ¶ 21.

The Complaint alleges that RM Broadcasting did not have any kind of joint venture relationship whatsoever with Rossiya Segodnya.  *Id*. at ¶ 23.  The relationship between RM Broadcasting and Rossiya Segodnya is strictly an arms-length commercial business transaction whereby RM Broadcasting resold radio airtime to Rossiya Segodnya for a monetary profit; this

commercial transaction in no way created an agency relationship. *Id*. At no time did RM Broadcasting participate in, own, control, operate, or have any decision-making authority whatsoever with respect to the content of any programming created, produced, procured, or broadcasted by Rossiya Segodnya.[1] *Id*. at ¶ 24.

The relevant provisions of the Services Agreement demonstrate that no agency relationship whatsoever exists between RM Broadcasting and Rossiya Segodnya. *Id*. at ¶ 27. Section 18 of the Services Agreement specifically states that the Services Agreement does not create a partnership or agency relationship:

> ***Section 18: No Partnership or Agency***: Nothing in this Agreement is intended to or shall operate to create a partnership between the Parties or authorize either party to act as an agent for the other. Furthermore, neither Party shall have authority to act for or on behalf of or otherwise bind the other in anyway (including, but not limited to, the making of any representation or warranty, the assumption of any obligation or liability and the exercise of any right of power).

*Id*. at ¶ 28.

Section 6.1(d) of the Services Agreement further provides that Rossiya Segodnya is responsible for all content and will hold RM Broadcasting harmless:

> **Section 6.1(d): Consent.** The Client [Rossiya Segodnya] shall be liable for the content of the radio programs and shall hold the Contractor [RM Broadcasting] harmless of any documented actual losses, if the Contractor is able to prove that this loss results from the broadcasting of Radio Programs in breach of applicable

---

[1] As alleged in the Complaint, in order to maintain complete transparency and educate the American public of the origins of the broadcast, the purchased radio airtime contains an hourly sponsorship identification pursuant to FCC regulations. *Id*. at ¶ 25. Specifically, the current sponsorship identification states, "The time is paid for by RM Broadcasting. *Id*. Programming provided by International News Agency Rossiya Segodnya." *Id*. RM Broadcasting does not own any broadcasting facilities from which Rossiya Segodnya's content is or was broadcasted. *Id*. at ¶ 26.

law, not exceeding the amount mentioned in Clause 7.3 of this
Agreement.

*Id*. at ¶ 29.

Moreover, Section 6.1(e) of the Services Agreement requires Rossiya Segodnya to comply

with all applicable laws and regulations:

> **Section 6.1(e):** The Client [Rossiya Segodnya] further
> agrees that, throughout the term of this Agreement, the Client shall
> comply with all laws, rules, regulations, policies and procedures
> including, but not limited to, the FCC's technical, political
> broadcasting, obscenity and indecency regulations, rules for placing
> sponsorship materials and any other applicable norms regarding
> Radio Programs. The Client shall make reasonable efforts to ensure
> that the content of the Radio Programs complies with the applicable
> laws.

*Id*. at ¶ 30.

Finally, Section 6.2(c)(vi) of the Services Agreement prohibits RM Broadcasting from

changing the content of the programming:

> **Section 6.2(c)(vi):** Contractor [RM Broadcasting] shall
> broadcast/transmit radio programs (parts/fragments) without
> abridging them or any additions, editing, duplicating or other actions
> detrimental to the integrity of the Radio Programs (their
> parts/fragments). The Radio Programs (their parts/fragments)
> should not be interrupted by advertising. The Parties agree that this
> provision is a material term hereof.

*Id*. at ¶ 31.

As alleged in the Complaint, as early as 2012, the Government, by and through the FARA

Registration Unit of the National Security Division of the Department of Justice (the "**Registration**

**Unit**"), began requesting that RM Broadcasting provide information to determine RM

Broadcasting's potential obligation to register as a foreign agent pursuant to FARA's requirements.

*Id*. at ¶ 32. In response to various requests made by the Government over the years, by and through

the Registration Unit, RM Broadcasting provided information to the Registration Unit demonstrating that RM Broadcasting clearly was not acting as a foreign agent on behalf of any principal. *Id*. at ¶ 33. The Registration Unit has not required RM Broadcasting to register as a foreign agent pursuant to FARA's requirements until recently, approximately five (5) years after the initial inquiry in 2012.

Most recently, on December 21, 2017, the Registration Unit sent correspondence regarding RM Broadcasting's potential obligation to register as a foreign agent pursuant to FARA and requesting information from RM Broadcasting relative to the Registration Unit's making of such a determination. *Id*. at ¶ 34. A copy of the Registration Unit's December 21, 2017 correspondence is attached to the Complaint as **Exhibit "B**." *Id*. at ¶ 35. Through its legal counsel, on January 20, 2018, RM Broadcasting responded to the Registration Unit via letter. *Id*. at ¶ 36. A copy of counsel for RM Broadcasting's response is attached to the Complaint as **Exhibit "C**." *Id*.

On June 21, 2018, the Registration Unit sent written correspondence to RM Broadcasting's legal counsel indicating its position that RM Broadcasting was required by law to register as a foreign agent. *Id*. at ¶ 37. A copy of the Registration Unit's June 21, 2018 correspondence is attached as **Exhibit "D"** and is incorporated herein by reference. *Id*. On July 27, 2018, RM Broadcasting's legal counsel responded in writing to the Registration Unit's demand that RM Broadcasting register as a foreign agent pursuant to the provisions of FARA. *Id*. at ¶ 38. Specifically, the letter disagreed with the Government's interpretation of the definition of "agent of a foreign principal." *Id*. The letter also provided a thorough analysis, with corroborating evidence, that at no time was RM Broadcasting acting under the direction and control of Rossiya

Segodnya or as an agent of a foreign principal. *Id*. A copy of counsel for RM Broadcasting's July 27, 2018 correspondence is attached as **Exhibit "E"** and is incorporated herein by reference. *Id*.

Nevertheless, the Government, through the Registration Unit, continues to demand that RM Broadcasting register as a foreign agent pursuant to the provisions of FARA. *Id*. at ¶ 39. RM Broadcasting, however, has taken the position that it has no legal obligation whatsoever to register as a foreign agent given that the facts and circumstances clearly demonstrate that, in fact, RM Broadcasting is not acting as a foreign agent on behalf of any principal. *Id*.

**B.    *The Department's Counterclaim***

The Counterclaim seeks statutory injunctive relief against RM Broadcasting pursuant to FARA to compel RM Broadcasting "to submit a true and complete registration statement, and supplements thereto, to the Attorney General, as required by Section 2(a) of FARA, 22 U.S.C. § 612(a), by virtue of its acting as an agent of either of its foreign principals: Rossiya Segodnya and the government of the Russian Federation." Counterclaim at ¶ 1. The Counterclaim alleges that Russia's state-owned news agency, Rossiya Segodnya, contracted with RM Broadcasting to provide for the AM radio broadcast of Russia's state-run, English-language radio channel, Radio Sputnik, in Washington D.C. *Id*. at ¶ 3.

According to the Counterclaim, pursuant to the Services Agreement, RM Broadcasting is required to provide for broadcast of Radio Sputnik's radio programming in Washington, D.C. *Id*. at ¶ 4. The Counterclaim, however, acknowledges that Rossiya Segodnya controlled the content of all radio broadcasts, and RM Broadcasting had no right or ability to modify or control the broadcasting content. *Id*.

As part of the Department's attempt to portray RM Broadcasting as Rossiya Segodnya's principal, the Counterclaim alleges a series of contractual provisions under the Services Agreement that the Department contends forms a principal-agency relationship within the meaning of FARA. *See* Counterclaim at ¶¶ 24-29.  Additionally, the Counterclaim alleges that by broadcasting Radio Sputnik "at the direction and control of Rossiya Segodnya, RM Broadcasting 'engages directly [and] indirectly in the publication or dissemination of oral . . . or matter of any kind, including publication by means of . . . . broadcasts' and therefore serves as a 'publicity agent' for Rossiya Segodnya and the government of the Russian Federation."  Counterclaim at ¶ 30.  Moreover, the Counterclaim alleges that RM Broadcasting acts as an "information-service employee" for Rossiya Segodnya and the government of the Russian Federation by "furnishing, disseminating, or publishing" programs.  *Id*. at ¶ 31.

## III.    MEMORANDUM OF LAW

### A.    Standard

Fed. R. Civ. P. 12(c) governs judgment on the pleadings.  Rule 12(c) states: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

"Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled  to judgment as a matter of law." *Miccosukee Tribe of Indians v. United States*, No. 04-21448-CIV-Gold/Turnoff, 2006 U.S. Dist. LEXIS 6462 at *29 (S.D. Fla. Feb. 16, 2006) (citing *Florida Evergreen Foliage, et al. v. E.I. Du Pont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1349 (S.D. Fla. 2001)).  "In reviewing a motion for judgment on the

pleadings, the court must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

The applicable standard for determining judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as a motion to dismiss under Rule 12(b)(6). *Guidry v. Am. Pub. Life. Ins. Co.*, 512 F. 3d 177, 180 (5th Cir. 2007). A plaintiff (or counter-plaintiff) must plead sufficient facts such that a claim is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 555.

Judgment on the pleadings is appropriate because the allegations of the pleadings demonstrate that RM Broadcasting is not an agent of a foreign principal and, accordingly, is not required to register under FARA. Moreover, judgment on the pleadings is appropriate because it is clear that the Department cannot allege any facts giving rise to any obligation by RM Broadcasting to register as an agent of a foreign principal under FARA.

**B.**     ***FARA's Requirements***

The obligation to register as a foreign agent is found within the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.* Pursuant to 22 U.S.C. § 611(c):

> the term 'agent of a foreign principal' means (1) any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person –
>
> (i)     engages within the United States in political activities for or in the interests of such foreign principal;

9

    (ii)     acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;

    (iii)    within the United States solicits, collects, disburses, or dispenses contributions, loans, money or other things of value for or interest in such foreign principal; or

    (iv)    within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States.

Pursuant to 22 U.S.C. § 618(a), any person who willfully fails to register as a foreign agent pursuant to FARA is subject to five (5) years imprisonment and a $10,000.00 fine.   The Government also has the option of seeking injunctive relief pursuant to 22 U.S.C. § 618(f).  Foreign agents who are required to register pursuant to FARA are also required to publicly file all service agreements, including the confidential terms of payment, pursuant to 22 U.S.C. § 612(a)(4).[2]

Notably, in amending the definition of "agent" in 1966, Congress emphasized that the Act should not require the registration "of persons who are not, in fact, agents of foreign principals but whose acts may incidentally be of benefit to foreign interests, even though such acts are part of the normal course of those persons' own rights of free speech, petition or assembly." H.R.Rep. No. 1470, 89th Cong.2d Sess. 5-6 (1966), *reprinted in* 1966 U.S. Code Cong. & Ad. News. 2397, 2401. *See also* *Attorney General of the United States v. Irish People, Inc.,* 796 F.2d 520 (DC Cir. 1986). The 2016 Office of Inspector General Report reiterated this legislative intent stating, "While foreign governments may be creative in their attempt to influence U.S.  policy and sway public

---

[2]    As alleged in the Complaint, RM Broadcasting believes that the public filing of confidential terms of payment will substantially impair RM Broadcasting's ability to continue to promote and conduct business.   Complaint at ¶ 42.

10

opinion, if it is done in a way that **does not create a statutory agency relationship** on the part of the agent acting within the United States at the direction or control of the foreign government, then **there is no agent of a foreign principal with an obligation under FARA**." (emphasis added) Office of Inspector General Report, *Audit of the National Security Division's Enforcement and Administration of the Foreign Agents Registration Act* (2016), page 9.

DOJ regulations have not provided further clarification on the legislative intent of the statute and the scope of the agency requirement under FARA, thus leaving courts to interpret requirements of an agency relationship.  The Third Circuit applied a common law standard to define the agency relationship stating:

> "The true test, we think, was whether agency in fact existed, with the term agency defined substantially as in the Restatement of Agency, Section 1, which states it to be: 'The relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act'."

*German-American Vocational League, Inc.*, 153 F.2d 860, 864 (3d Cir. 1946).

The Second Circuit stated:

> "[T]he Act requires registration by a person who acts, in specified ways, at a foreign principal's "request," we caution that this word is not to be understood in its most precatory sense. Such an interpretation would sweep within the statute's scope many forms of conduct that Congress did not intend to regulate. The exact perimeters of a "request" under the Act are difficult to locate, falling somewhere between a command and a plea."

*Attorney Gen. of United States v. Irish N. Aid Comm.*, 668 F.2d 159, 161 (2d Cir. 1982).

In *Attorney General of the United States v. Irish People, Inc.,* 796 F. 2d 520 (D.C. Cir. 1986), the Court of Appeals for the District of Columbia Circuit held that there must be sufficient evidence of formal control over a party.  The court stated:

11

> The undisputed facts offered to establish that the newspaper acted at INAC's order or request were entirely circumstantial. No request, order, command, or directive was ever shown. There was no indication that Irish People had printed any articles at INAC's request or sought INAC's approval of its editorial views. Nor was there any proof that Irish People had ever taken any action because it had been urged, prodded or instructed to do so by INAC."

*Id*. at 523.

As explained below, under no set of circumstances can the Department demonstrate that RM Broadcasting was formally controlled by Rossiya Segodnya. As such, judgment on the pleadings should be entered in RM Broadcasting's favor.

**C.     *The Allegations of the Pleadings Demonstrate That RM Broadcasting is Not Rossiya Segodnya's Agent***

The allegations of the pleadings conclusively demonstrate that RM Broadcasting did not act (and is not now acting) in the capacity of an agent of a foreign principal. Contrary to the Government's position that RM Broadcasting should be obligated to register as a foreign agent because it serves as a "publicity agent" and "information services employee" for Rossiya Segodnya, the allegations of the pleadings (and, in particular, the Counterclaim) show that RM Broadcasting clearly is neither Rossiya Segodnya's publicity agent nor its information services employee.

In particular, pursuant to the terms of the Services Agreement, RM Broadcasting resold commercial radio airtime to Rossiya Segodnya. Complaint at ¶ 24. RM Broadcasting did not have any kind of joint venture relationship whatsoever with Rossiya Segodnya. *Id*. at ¶ 25. The relationship between RM Broadcasting and Rossiya Segodnya is strictly a commercial business arrangement whereby RM Broadcasting sold radio airtime to Rossiya Segodnya for a monetary profit. *Id*. At no time did RM Broadcasting participate, own, control, operate, or have any decision

12

making authority whatsoever with respect to the content of any programming created or broadcasted by Rossiya Segodnya. *Id*. at ¶ 26. RM Broadcasting does not own any broadcasting facilities from which Rossiya Segodnya's content was broadcasted. *Id*. at ¶ 27. Moreover, the relevant provisions of the Services Agreement demonstrate that no agency relationship whatsoever exists between RM Broadcasting and Rossiya Segodnya. *Id*. at ¶ 28.

As specifically admitted in the Counterclaim, the relationship between RM Broadcasting and Rossiya Segodnya is strictly contractual in nature. Counterclaim at ¶¶ 24; 27. As also specifically admitted in the Counterclaim, RM Broadcasting has no right to alter content provided by Rossiya Segodnya prior to broadcast. *Id*. Nevertheless, the Counterclaim alleges that RM Broadcasting is a "publicity agent" and an "information-service employee" on behalf of Rossiya Segodnya within the meaning of FARA. *Id*. at ¶¶ 30-31.

Under these circumstances, it is clear that RM Broadcasting was not acting as Rossiya Segodnya's agent. As specifically acknowledged in the Counterclaim, pursuant to 28 U.S.C. § 611(h) a "publicity agent" includes "any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publication by means of advertising . . . lectures, broadcasts, . . . or otherwise." Counterclaim at ¶ 14.

Again, the relationship between the parties was characterized by RM Broadcasting reselling airtime to Rossiya Segodnya. The business transaction between the parties to the Services Agreement involved RM Broadcasting transferring radio airtime broadcast rights to Rossiya Segodnya in exchange for payment. RM Broadcasting was not directly involved in broadcasting any material or content over any airwaves, since obviously at all times material the radio stations

themselves remained in complete control over their airwaves.  As such, RM Broadcasting clearly did not at any time whatsoever publicize or disseminate any material on behalf of Rossiya Segodnya and, in fact, had no right to do so pursuant to the express terms of the Services Agreement.

As acknowledged in the Counterclaim, an "information-service employee" is defined under 22 U.S.C. § 611(i) as

> [A]ny person who is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political, industrial, employment, economic, social, cultural, or other benefits, advantages, facts, or conditions of any country other than the United States or of any government of a foreign country or of a foreign political party or of a partnership, association, corporation, organization, or other combination of individuals organized under the laws of, or having its principal place of business in, a foreign country.

Counterclaim at ¶ 14.

The express terms of the Services Agreement contradict the allegations of the Counterclaim inasmuch as RM Broadcasting does not engage in furnishing, disseminating, or publishing anything on Rossiya Segodnya's behalf.  To the contrary, RM Broadcasting's obligation to Rossiya Segodnya was primarily to transfer rights to radio broadcast airtime that RM Broadcasting had purchased from a third party.  The language of the Services Agreement demonstrates that RM Broadcasting was not directly or indirectly involved in broadcasting any content on Rossiya Segodnya's behalf, given that RM Broadcasting had absolutely no ability to control or alter the programming content.

Under the facts alleged in the pleadings, it is clear that Rossiya Segodnya did not exert any control whatsoever over RM Broadcasting.  *See Irish People, Inc.,* 796 F. 2d at 523 (requiring

14

evidence of formal control over a party in connection with determining whether or not the party was an agent within the meaning of FARA).  Outside of an arms-length, commercial transaction that is evidenced by a written contract, there is absolutely no allegation in the pleadings that RM Broadcasting agreed to act on behalf of or be controlled by Rossiya Segodnya.  *German-American Vocational League, Inc.*, 153 F.2d at 864 (defining an agency relationship for FARA purposes as requiring consent by one person that another shall act on its behalf subject to the person's control, along with consent by the other person to so act).  Consequently, the allegations of the pleadings are wholly insufficient to demonstrate any agency relationship within the meaning of FARA, under any circumstances.

Accordingly, judgment on the pleadings should be entered in RM Broadcasting's favor because the allegations of the pleadings clearly demonstrate that under no circumstances can the provisions of the Services Agreement support the existence of any relationship whereby RM Broadcasting acted as an agent on behalf of Rossiya Segodnya.  *See*, *e.g.*, *Miccosukee Tribe of Indians*, 2006 U.S. Dist. LEXIS 6462 at *29 (stating that "[j]udgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled  to judgment as a matter of law").

**D.**     ***The Allegations of the Counterclaim are Contradicted by the Clear Provisions of the Services Agreement***

Despite the Counterclaim's attempt to frame the relationship between Rossiya Segodnya and RM Broadcasting as a foreign principal-agent relationship, the clear terms of the Services Agreement demonstrate conclusively that, in fact, the only relationship between these entities is strictly contractual in nature.  As such, Rossiya Segodnya has no ability, right, or expectation of controlling RM Broadcasting's activities outside of rigid contractual obligations that specifically

are set forth in the Services Agreement.  Under these circumstances, RM Broadcasting clearly is not an agent of Rossiya Segodnya.

Here, the plain language of the Services Agreement clearly contradicts – and therefore neutralizes – the operative allegations of the Counterclaim.  "When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F. 3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Industries, Inc. v. Irvin*, 496 F. 3d 1189, 1206 (11th Cir. 2007); *see Simmons v. Peavy-Welsh Lumber Co.*, 113 F. 2d 812, 813 (5th Cir. 1940) (stating that "[w[here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control").  Pursuant to the terms of the Services Agreement, all of RM Broadcasting's obligations to Rossiya Segodnya are strictly contractual in nature pursuant to what was unquestionably an arms-length business transaction.  RM Broadcasting's primary obligation under the Services Agreement is to provide radio broadcast airtime to Rossiya Segodnya.  This airtime was purchased by RM Broadcasting from U.S.-based radio stations and, of course, was not purchased with a view towards advancing any interests of any foreign principal or country.  It was purchased consistent with RM Broadcasting's business model of reselling broadcast rights for profit.  Thereafter, the airtime was resold by RM Broadcasting to Rossiya Segodnya pursuant to the express terms of the Services Agreement.

The Services Agreement expressly states that no agency relationship exists between RM Broadcasting and Rossiya Segodnya.  *See* Services Agreement at ¶ 18 (stating that "[n]othing in this Agreement is intended to or shall operate to create a partnership between the Parties or authorize either party to act as an agent for the other").  Moreover, pursuant to the express language of the Services Agreement, RM Broadcasting had absolutely no authority to act on behalf of or

16

bind Rossiya Segodnya to any legal obligations of any kind. *Id.* (stating that "neither Party shall have authority to act for or on behalf of or otherwise bind the other in anyway (including, but not limited to, the making of any representation or warranty, the assumption of any obligation or liability and the exercise of any right of power)").   Simply put, it is clear as day that RM Broadcasting is not (and has never been) an agent acting on Rossiya Segodnya's behalf because RM Broadcasting is legally prohibited from doing so pursuant to the express terms of the Services Agreement.

Not only did RM Broadcasting lack any authority whatsoever to act on Rossiya Segodnya's behalf, but also RM Broadcasting had no right or ability to alter content broadcasted over U.S. airwaves in any way, shape or form. *Id.* at ¶ 6.2(c)(vi).  The complete absence of any legal right or obligation on the part of RM Broadcasting to either act as Rossiya Segodnya's agent or alter Rossiya Segodnya's programming content directly contradicts the operative allegations of the Counterclaim that RM Broadcasting was somehow acting as an agent of Rossiya Segodnya, a foreign principal. *See Crenshaw*, 556 F. 3d at 1292; *Griffin Industries, Inc.*, 496 F. 3d at 1206; *Simmons*, 113 F. 2d at 813.

As such, it is clear that the allegations of the Counterclaim are neutralized by the aforementioned provisions of the Services Agreement.  As such, judgment on the pleadings in RM Broadcasting's favor is appropriate given that the Department cannot under any circumstances allege facts giving rise to a right to statutory injunctive relief under FARA. *See*, *e.g.*, *Miccosukee Tribe of Indians*, 2006 U.S. Dist. LEXIS 6462 at *29 (stating that "[j]udgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled  to judgment as a matter of law").

17

**E.    *The Services Agreement Reflects No Classic Indicia Evidencing a Principal-Agent Relationship***

Additionally, the clear provisions of the Services Agreement also contradict key characteristics of a principal-agent relationship.  *See, e.g.*, *Phila. Imdem. Ins. Co. v. Kohne*, 294 F. Supp. 2d 1319, 1327 (M.D. Fla. 2003) (stating that "[t]he elements of an actual agency relationship are 1) acknowledgement by the principal that the agent will act for him or her; 2) the agent's acceptance of the undertaking; 3) control by the principal over the actions of the agent").  Here, the elements of an actual agency relationship are expressly repudiated by the express provisions of the Services Agreement.  Specifically, the parties to the Services Agreement expressly disclaimed any principal-agency relationship.  The parties to the Services Agreement also acknowledged that Rossiya Segodnya had no control over RM Broadcasting's actions outside the express obligations set forth in the Services Agreement.  The relationship was a classic arms-length, for profit business arrangement; not a principal-agent relationship.

It is abundantly clear that the pleadings establish the absence of a principal-agent relationship involving RM Broadcasting.  Accordingly, judgment on the pleadings is appropriate in RM Broadcasting's favor.  *See, e.g.*, *Miccosukee Tribe of Indians*, 2006 U.S. Dist. LEXIS 6462 at *29 (stating that "[j]udgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law").

## IV.    CONCLUSION

Based on the foregoing, it is clear that the pleadings establish that RM Broadcasting was not (and currently is not) an agent on behalf of a foreign principal within the meaning of FARA.  It is equally clear that under no set of facts may it be plausibly alleged that RM Broadcasting acted or currently is acting as Rossiya Segodnya's agent.  Accordingly, RM

18

Broadcasting respectfully requests that this Court enter judgment on the pleadings in RM

Broadcasting's favor with respect to both the Complaint and the Counterclaim, along with such

other and further relief this Court deems just and proper.

**FISHER BROYLES LLP**
*Attorneys for Plaintiff/Counter-Defendant,*
*RM Broadcasting, LLC*
2390 Tamiami Trail North, Suite 100
Naples, FL 34103
Telephone: (202) 570-0248
Facsimile:  (239) 236-1260

By:  /s/ Nicole Hughes Waid
    **NICOLE HUGHES WAID**
    Fla. Bar. No. 121720
    *nicole.waid@fisherbroyles.com*

    **BRIAN E. DICKERSON**
    Fla. Bar. No. 106615
    brian.dickerson@fisherbroyles.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic filing with the Clerk of Court using CM/ECF on March 15, 2019 on all counsel or parties of record on the Service List below.

Nicholas Hunter
Trial Attorney
U.S. Department of Justice
National Security Division
Counterintelligence and Export Control Section
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530

Matthew J. Feeley
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street, Third Floor
Miami, FL 33132