

**Nicole H. Waid, Esq.**
Partner

2390 Tamiami Trail North
Suite 100
Naples, Florida 34103

Direct:  (202) 906-9572

nicole.waid@fisherbroyles.com
www.FisherBroyles.com

**EXHIBIT C**

**CONFIDENTIAL: EXEMPT FROM FOIA**

**VIA EMAIL AND FEDERAL EXPRESS**
Heather H. Hunt
Clifford Rones
Chief, FARA Registration Unit
U.S. Department of Justice
National Security Division
600 E Street, N.W.
BICN - Room 1300
Washington, DC 20004

January 20, 2018

Re:     RM Broadcasting, LLC

Dear Ms. Hunt and Mr. Rones:

Our firm represents RM Broadcasting, LLC ("RM").  We are writing in response to your letter dated December 21, 2017, regarding the determination of our client's possible obligation to register pursuant to the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. §611 et. seq. ("FARA").[1]  The responses to your inquiries are detailed below.

## I. Questions

1.  A complete statement of the current ownership and control of RM:  RM is a Delaware limited liability company, formed in January 2010.  Its 100% member is Arnold Ferolito, a United States citizen.  Mr. Ferolito is the sole member, officer, and operator of RM.  RM has no employees.

2.  Description of RM's regular business and/or activity:  RM contracts with third party program providers and Federal Communications Commission ("FCC") licensees for the transmission of programming over airtime on licensed radio broadcast stations.  Such arrangements are permitted under and governed by the Communications Act of 1934, as amended, and the rules and regulations of the FCC.  RM purchases airtime from FCC licensees and resells that airtime to radio programmers; RM does not create, provide,

---

[1] The FARA Unit sent Mr. Ferolito of RM Broadcasting, LLC a letter requesting similar information on December 13, 2012.  Mr. Ferolito's counsel, Davina Sashkin of Fletcher, Heald, and Hildreth, responded to the inquiry on January 4, 2013, with the requested information.  RM was not required to register pursuant to FARA after this initial inquiry.  The current request for information is the first correspondence with the FARA Unit since the submission on January 4, 2013.

or have any direction or control over the content of the programming, and does not possess the authority to exercise editorial control over the programming content.

3.   Description of the activities RM has engaged in, or the services provided, by RM to Radio Sputnik, *Rossiya Segodnya*, or any other related or foreign entity:  Radio Sputnik creates, produces, and controls radio broadcast services, including news, public affairs and cultural programming.  RM purchases airtime from Way Broadcasting, Inc. (WZHF AM), an FCC licensee, and resells that airtime to Radio Sputnik for program transmission.

4.   Copy of the Written Agreement: A copy of the written agreement between RM and *Rossiya Segodnya* is attached.

5.   Copies of all communications between RM Broadcasting and Radio Sputnik, *Rossiya Segodnya*: We respectfully submit that this request is overbroad, unduly burdensome, and unnecessary. The FARA Registration Unit suggests that it needs these communications to determine the nature of the relationship between RM Broadcasting and Radio Sputnik, however the letter to RM from the Department of Justice dated December 21, 2017, makes clear that the FARA Registration Unit understands RM Broadcasting's relationship with Radio Sputnik programming and WZHF AM. *See* Attachment, page 1.  In addition, the relationship of the parties can be clearly determined by the responses to DOJ's questions contained within this letter and the review of the Services Agreement which sets out the contractual duties of each party.

We cannot identify any statutory authority that would require RM to produce such documents for the determination of a registration obligation.  The government has the right to inspect the "books of account and other records" of an "agent of a foreign principal registered" under the FARA statute pursuant to 22 USC §615.  RM is not registered under FARA and objects to any determination that its activities can be classified as actions taken on behalf of a foreign principal.  Finally, we respectfully submit that RM has a right against unreasonable search and seizure and this request appears to be an attempt by the government to subterfuge that Constitutional right.

6.   Additional relevant information: In his letter, Mr. Rones notes that Reston Translator LLC registered under FARA on November 18, 2017, in connection with activities that "appear similar to those at issue here; namely its translating of radio programming, marketed as "Radio Sputnik," on behalf of *Rossiya Segodnya* to an FM HD-2 radio station (105.5 MHz) in the Washington D.C. area."  First, Reston Translator LLC operates a radio transmission facility that rebroadcasts radio programming; RM does not operate a radio transmission facility, but is a purchaser and reseller of radio airtime. Second, the reference to Reston Translator LLC's registration appears to be slightly disingenuous. The only reason that Reston Translator LLC registered was because DOJ mandated that the company register under FARA and the company feared the prosecutorial ramifications of any non-compliance with that mandate.  Reston Translator LLC strongly disagreed with the FARA Registration Unit's determination that the company was obligated to register pursuant to FARA.  Reston Translator stated its objection in a nine (9) page letter to the FARA Unit and made it clear that the company objected to DOJ's analysis.  This does not qualify as strong precedent for the requirement to register and this analysis should not be applied to RM. Finally, Mr. Rones asserts in his letter that the FARA Registration Unit's request for information is "consistent

with this longstanding practice." Whereas the process to request information for a registration obligation determination may be a longstanding practice, the FARA statute has not been historically applied to broadcasting or other non-print media outlets. It appears that this "new" interpretation of the statute will have far-reaching ramifications for other news and media sources, such as internet providers, multichannel video programmer distributers as Comcast, Time Warner/Charter Communications and FiOS, as well as larger broadcasters which produce their own content.

## II.  Additional Information

1.  <u>Relationship between RM Broadcasting and *Rossiya* Segodnya</u>:  As discussed above, RM purchases airtime from Way Broadcasting, Inc. (WZHF AM), an FCC licensee, and resells that airtime to Radio Sputnik for program transmission.

2.  <u>Sources of programming content that RM provides to WZHF</u>.  Radio Sputnik is the sole source of the programming content provided by RM to Way Broadcasting, Inc.  Radio Sputnik possesses absolute authority and control over the content of the programming and exercises complete editorial control over the programming content.[2]  RM does not possess any direction or control over the content of the programming, RM does not possess any editorial control, and RM does not operate under the direction or control of Radio Sputnik.  RM has merely entered into a commercial business transaction whereby RM is the purchaser and reseller of airtime.

3.  <u>Distribution of any foreign based programming other than Radio Sputnik on WZHF</u>:  RM entered into a Services Agreement with Radio Sputnik for the transmission of programming over airtime purchased from FCC licensee, Way Broadcasting, Inc. Way Broadcasting, Inc. broadcasts/distributes the programming via its licensed radio station WZHF AM. RM currently does not have any other Services Agreements.

4.  <u>Prior to November 27, 2017, did RM receive any funding from Radio Sputnik, *Rossiya Segodnya,* or any other related or foreign entity</u>?: RM received monetary deposits from Radio Sputnik, *Rossiya Segodnya* on November 24, 2017, pursuant to the contractual terms of the Services Agreement. RM did not receive any additional monetary payments from Radio Sputnik, *Rossiya Segodnya* prior to that date. RM received contractual payments from Voice of Russia pursuant to a prior Services Agreement for the transmission of airtime to an FCC licensee.  This contract was previously provided to the FARA Registration Unit in January 2013.

5.  <u>What date did RM cease distributing Voice of Russia broadcasts</u>?:  RM entered into a Services Agreement with Voice of Russia for the transmission of airtime between the programmer and an FCC licensee. The contract was cancelled on July 1, 2014.

---

[2] Radio Sputnik's control is subject to Way Broadcasting, Inc.'s preemptive authority to ensure compliance with FCC regulations.

## III.    Conclusion

RM has responded fully to the Department's inquiries, since receipt of the initial inquiry in December 2013, and continues to cooperate with additional information requests. However, it is apparent that the contractual duties found within the terms of the Services Agreement do not fall within the statutory definition of a foreign agent pursuant to 22 USC §611(c). According to the statute, the term "agent of a foreign principal" means:

> **"(1)** any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—
>
> **(i)** engages within the United States in political activities for or in the interests of such foreign principal;
>
> **(ii)** acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
>
> **(iii)** within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or
>
> **(iv)** within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States;…"

RM does not act as an agent, representative, employee, or servant of Radio Sputnik, *Rossiya Segodnya*. The contractual relationship between the two parties solely consists of the availability of radio airtime between Radio Sputnik and an FCC licensee. Quite simply, RM has entered into a commercial business transaction whereby RM is a purchaser and reseller of radio airtime. RM is not subject to the direction or control of Radio Sputnik. Radio Sputnik has absolute control over the content of its radio broadcasts, including creative and editorial control. RM has no control over content, has no editorial control over programming, and does not broadcast the programming from its facilities. RM does not engage in political activities, nor does RM or Mr. Ferolito act as public relations counsel, publicity agent, information-service employee, or political consultant for or in the interests of a foreign principal. RM does not sponsor in any way the content of Radio Sputnik's broadcasting and it does not promote Russian interests. RM entered into a contractual relationship with Radio Sputnik to transmit its programming to an FCC licensee and RM was paid pursuant to the fulfillment of its contractual obligations – this is the only relationship that exists between the two entities. Moreover, RM does not solicit, collect, disburse, or dispense contributions, loans, money or other things of value for or in the interest of a foreign principal. RM is

paid pursuant to its transmission services as defined within the Services Agreement.  For all of these reasons, RM's business activities do not fall within the definition of the statute.[3]

The attached Services Agreement corroborates this analysis.  The following clause found within the Services Agreement clearly states that the contractual relationship does **not** create a partnership or agency relationship between the parties:

> "***Section 18: No Partnership or Agency***: Nothing in this Agreement is intended to or shall operate to create a partnership between the Parties or to authorize either party to act as an agent for the other.  Furthermore, neither Party shall have authority to act for or on behalf of or otherwise to bind the other in anyway (including, but not limited to, the making of any representation or warranty, the assumption of any obligation or liability and the exercise of any right or power)."

This contractual clause directly contradicts the government's agency theory.

Furthermore, the contractual duties of each party are explicitly described within the Services Agreement.  These contractual provisions substantiate RM's position that it does not have any control over the content of the radio broadcasts:

> "***Section 6.1(d): Content.***  The Client [*Rossiya Segodnya*] shall be liable for the content of the radio programs and shall hold the Contractor [RM] harmless of any documented actual losses, if the Contractor is able to prove that this loss results from the broadcasting of Radio

---

[3] Assuming, *arguendo*, that DOJ concludes that RM's Services Agreement with Radio Sputnik creates an agency relationship, there is a strong argument to be made that RM is not an "agent of a foreign principal" pursuant to 22 U.S.§ 611(d) which states that an "agent of a foreign principal" does *not include* "any news or press service or association organized under the laws of the United States or of any State or other place subject to the jurisdiction of the United States…so long as it is at least 80 per centum beneficially owned by, and its officers and directors, if any, are citizens of the United States, and such news or press service or association, newspaper, magazine, periodical, or other publication, is not owned, directed, supervised, controlled, subsidized, or financed, and none of its policies are determined by any foreign principal…" RM is a Delaware limited liability company, formed in January 2010, that contracts with third parties and Federal Communications Commission ("FCC") licensees for the transmission of programming over airtime between the programmers and the licensed radio broadcast stations.  Its 100% member is Arnold Ferolito, a United States citizen.  Mr. Ferolito is the sole member, officer and operator of RM.  RM has no employees. RM is not owned, directed, supervised, controlled, subsidized or financed by a foreign principal, and none of its policies are determined by any foreign individual or entity.  Although the statute does not specifically mention radio broadcasts or activities related to radio broadcasting, more recent interpretations of the First Amendment would indicate that these newer forms of media would fall within the spirit of the exception.

Programs in breach of applicable law, not exceeding the amount mentioned in Clause 7.3 of this Agreement."

"**Section 6.1(e):** The Client [*Rossiya Segodnya*] further agrees that, throughout the term of this Agreement, the Client shall comply with all laws, rules, regulations, policies and procedures including, but not limited to, the FCC's technical, political broadcasting, obscenity and indecency regulations, rules for placing sponsorship materials and any other applicable norms regarding Radio Programs. The Client shall make reasonable efforts to ensure that the content of the Radio Programs complies with the applicable laws."

"**Section 6.2(c)(vi):** Contractor [RM] shall broadcast/transmit radio programs (parts/fragments) without abridging them or any additions, editing, duplicating or other actions detrimental to the integrity of the Radio Programs (their parts/fragments). The Radio Programs (their parts/fragments) should not be interrupted by advertising. The Parties agree that this provision is a material term hereof."

These contractual provisions ensure that Radio Sputnik maintains complete control over the content of all radio broadcasts and RM has no authority to exercise creative or editorial control over the radio programming. RM respectfully submits that its contractual duties pursuant to the Services Agreement with Radio Sputnik do not fall within the statutory definition of "agent of a foreign principal" pursuant to 22 USC §611(c) and, therefore, RM is not obligated to register under FARA.

Please feel free to contact us with any further questions.

Best regards,

Nicole H. Waid, Esq., Partner

**EXHIBIT**
C 2

Идентификатор
00000000135170020002

Экземпляр
МИА «Россия сегодня»

**SERVICES AGREEMENT**

No. _0470/pc/2017_

**ДОГОВОР**

№ _0470/pc/2017_

**IN RESPECT OF BROADCASTING**
**AND TRANSMISSION OF**
**ROSSIYA SEGODNYA PROGRAMS**

**ОБ ОКАЗАНИИ УСЛУГ ПО**
**РАСПРОСТРАНЕНИЮ (ТРАНСЛЯЦИИ)**
**РАДИОПРОГРАММ**
**МИА «РОССИЯ СЕГОДНЯ»**

dated _November 14,_ 2017

от _14 ноября_ 2017 г.

between

между

**FEDERAL STATE**
**UNITARY ENTERPRISE**
**ROSSIYA SEGODNYA**
**INTERNATIONAL INFORMATION**
**AGENCY**

**ФЕДЕРАЛЬНЫМ**
**ГОСУДАРСТВЕННЫМ**
**УНИТАРНЫМ ПРЕДПРИЯТИЕМ**
**«МЕЖДУНАРОДНОЕ**
**ИНФОРМАЦИОННОЕ АГЕНСТВО**
**«РОССИЯ СЕГОДНЯ»**

and

и

**RM BROADCASTING LLC**

**RM BROADCASTING LLC**



**THIS SERVICES AGREEMENT** is entered into by and between:

(1) **RM BROADCASTING LLC**, ("**Contractor**"), a limited liability company organized under the laws of the State of Delaware under Employer Identification Number ███████, the United States of America, having its registered office at 101 Waters Edge Drive, Jupiter, Florida, 33477, and

(2) **Federal State Unitary Enterprise Rossiya Segodnya International Information Agency (Rossiya Segodnya)**, incorporated and registered in the Russian Federation under main state registration number (OGRN) 5137746242937, whose registered office is at Zubovskij blvd. 4, str.1,2,3 Moscow, Russia, 119021 (the "**Client**").

The Contractor and the Client are hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

**WHEREAS**, the Client wishes to broadcast its radio programs outside the Russian Federation.

**WHEREAS**, the Contractor has the required capability and wishes to render services for the broadcasting of the radio programs produced by the Client outside the Russian Federation.

**NOW, THEREFORE**, the parties hereto agree as follows:

## 1. DEFINITIONS

1.1 The definitions and constructions set forth in this Clause shall apply to this Agreement.

**Equipment:** any equipment, cabling, communications channels or technical facilities used directly or indirectly in the course of the provision of Services to the Client.

**Document:** includes, in addition to any document in writing, any drawing, map, plan, diagram, design, picture or other image, tape, disk or other device or

**НАСТОЯЩИЙ ДОГОВОР ОБ ОКАЗАНИИ УСЛУГ** заключен между:

(1) **RM BROADCASTING LLC**, Компанией с ограниченной ответственностью, созданной по законодательству штата Делавэр, под идентификационным налоговым номером: ███████ чей зарегистрированный офис находится по адресу: 101 Waters Edge Drive, Jupiter, Florida, 33477 («**Исполнитель**») и

(2) **Федеральным государственным унитарным предприятием «Международное информационное агентство «Россия сегодня» (МИА «Россия сегодня»)**, зарегистрированным в Российской Федерации за основным государственным регистрационным номером (ОГРН) 5137746242937, адрес места нахождения: 119021 Россия, г. Москва, Зубовский бульвар, д.4, стр.1,2,3 («**Заказчик**»).

Исполнитель и Заказчик далее именуются по отдельности «**Сторона**» и совместно – «**Стороны**».

## ПРЕАМБУЛА

**ПОСКОЛЬКУ** Заказчик имеет намерение распространять свои радиопрограммы за пределами Российской Федерации.

**ПОСКОЛЬКУ** Исполнитель обладает необходимыми возможностями и желает оказывать услуги по распространению радиопрограмм Заказчика за пределами Российской Федерации.

**С УЧЕТОМ ВЫШЕИЗЛОЖЕННОГО** Стороны пришли к соглашению о нижеследующем:

## 1. ОПРЕДЕЛЕНИЯ

1.1 Определения и правила толкования в настоящем пункте применяются к настоящему Договору.

**Оборудование:** любое оборудование, кабели, каналы связи и технические средства, используемые непосредственно или косвенно в ходе оказания Услуг Заказчику.

**Документ:** включает, дополнительно к любому документу в письменной форме, любой чертеж, карту, план, диаграмму, проект, картинку или



record embodying information in any form.

**Input Material:** all Documents, information and materials made available by the Client for provision of the Services, including computer programs, data, reports and specifications.

**Material:** having real importance or great consequences with respect to the Services and Radio Program provided as required in this Agreement, including but not limited to failure to comply with applicable regulations and laws.

**Time Brokerage Agreements ("TBA"):** the agreements for the transmission of the Client's programming between the Contractor and a licensee of a radio station. Covering the Washington area, district of Columbia, under which such licensee - Way Broadcasting Licensee LLC ("WBL") will broadcast the Client's broadcasting programs twenty-four (24) hours per day, seven (7) days per week (except for 5 (Five) seconds at the top of every hour broadcast of station identification announcements inserted by Contractor for the Station and channel as required under FCC regulations, such time for such inserted announcements shall not be paid for by the Client) on WBL-owned station WZHF 1390 AM.

**Services:** services for the broadcasting/transmission of the Client's Radio Programs, being the reception from the Client and transmission of a signal via which the Radio Programs will be broadcast, to be provided by the Contractor hereunder.

**Radio Program(s):** Rossiya Segodnya's audio communications and materials and/or packages for broadcasting.

**Authorization documents:** documents (including but not limited to broadcasting licenses, frequency assignments, station operating permits and other relevant documents) issued to the Contractor or the third party engaged in the provision of the Services by the Contractor, in accordance with the legislation of the State of rendering of Services, by the competent government body, and which confirm the

прочее изображение, ленту, диск или другое устройство, либо запись, включающую информацию в любой форме.

**Используемый Материал:** все Документы, информация и материалы, предоставляемые Заказчиком в связи с оказанием ему Услуг, включая компьютерные программы, данные, отчеты и спецификации.

**Существенный:** имеющий реальную важность или значительные последствия в отношении предоставления Услуг и Радиопрограмм надлежащим образом по Договору, включая, но не ограничиваясь несоблюдением применимых нормативных актов и законов.

**Соглашения о маклерстве времени** (далее именуемое «СМВ»): соглашения о трансляции программ Заказчика между Исполнителем и владельцем лицензии. В отношении радиостанции, охватывающей вещанием территорию г. Вашингтон, округ Колумбия, по которому такой владелец лицензии - «Вэй Броадкастинг Лайсенси ЛЛС» (далее именуемый «ВБЛ»), будет транслировать вещательные программы Заказчика двадцать четыре (24) часа в сутки, семь (7) дней в неделю (за исключением 5 (Пяти) секунд в начале каждого часа вещания, для объявления названия станции и канала Исполнителем, согласно требованиям FCC, и данное время за такие вставленные объявления не оплачивается Заказчиком) через принадлежащую «ВБЛ» радиостанцию «WZHF 1390 AM».

**Услуги:** услуги по распространению (трансляции) Радиопрограмм Заказчика - прием от Заказчика и передача в эфир сигнала, посредством которого осуществляется распространение Радиопрограмм, которые будет оказывать Исполнитель по настоящему Договору.

**Радиопрограмма(ы):** аудио сообщения и материалы МИА «Россия сегодня» и\или их совокупность, предназначенные для выхода в эфир.

**Разрешительные документы:** документы (включая лицензии на вещание, частотные присвоения, разрешения на эксплуатацию станций и другие документы), выданные Исполнителю или третьему лицу, привлекаемому Исполнителем для оказания Услуг, уполномоченным органом государства, на территории которого оказываются Услуги, в



Contractor`s or such third party`s right to operate (provide Services).

**VAT:** value added tax.

1.2 **Headings of Clauses, Schedules and Paragraphs** are for convenience only and do not affect the construction or interpretation of this Agreement.

1.3 References to a "**person**" shall be construed so as to include any individual, firm, company, government, state or state agency, joint venture, association or partnership (whether or not having separate legal personality), its successors and assigns.

1.4 **Schedules** shall form an integral part of this Agreement and shall come into force as if set out in full in the body of this Agreement. Any reference to this Agreement includes the schedules.

1.5 Words importing the singular include the plural and vice versa; words importing a gender include every gender.

1.6 A reference to **writing** or **written** includes fax messages, as well as e-mail correspondence.

1.7 Where the words **include(s)**, **including** or **in particular** are used in this Agreement, they are deemed to have the phrase *inter alia* following them. Where the context permits, the words **other** and **otherwise** are illustrative and shall not limit the meaning of the words preceding them.

1.8 Any obligation in this Agreement of a person not to do something includes an obligation not to agree, allow, or acquiesce to that thing being done.

соответствии с действующим законодательством и подтверждающие право Исполнителя или такого третьего лица на осуществление деятельности (оказание Услуг).

**НДС:** налог на добавленную стоимость.

1.2 **Заголовки Пунктов, Приложений и Параграфов** предназначены исключительно для удобства пользования и не влияют на толкование настоящего Договора.

1.3 Ссылки на «**лицо**» трактуются как подразумевающие любое физическое лицо, фирму, компанию, правительство, государство или государственное ведомство, совместное предприятие, объединение или товарищество (с самостоятельной правосубъектностью или без таковой), вместе с их правопреемниками и цессионариями.

1.4 **Приложения** являются составной частью настоящего Договора и вступают в силу точно в таком же порядке, как если бы они были изложены в основном тексте настоящего Договора. Любая ссылка на настоящий Договор включает эти приложения.

1.5 При использовании единственного числа также подразумевается множественное число, и наоборот, а при использовании одного рода также подразумевается любой другой род.

1.6 Слова «**письменный**» или «**письменная форма**» включают факсовые сообщения, а также сообщения по электронной почте.

1.7 В тех случаях, когда слова «**включает**» (-ют), «**включая**» или «**в частности**» употребляются в настоящем Договоре, они будут считаться включающими словосочетание «**среди прочего**», которое вставляется после них. В тех случаях, когда это соответствует контексту, слова «**другой**» и «**прочие**» имеют иллюстративный характер и не должны ограничивать смысл слов, которые им предшествуют.

1.8 Любое обязательство в настоящем Договоре в отношении лица, которое не должно совершать определенные действия, включает обязательство не санкционировать, не разрешать, и не соглашаться на совершение таковых.



1.9 References to clauses and schedules are to Clauses of and the Schedules to this Agreement.

1.10 References to "**US Dollars**" or to "**$**" shall be construed as references to the lawful currency for the time being of the United States of America.

1.11 References to "**Russian rubles**" or "**RUB**" shall be construed as references to the lawful currency of the Russian Federation.

1.12 **FCC** means The Federal Communications Commission currently located at 445 12th Street SW, Washington, DC 20554, being an independent United States government agency regulating interstate and international communications.

## 2.   SUBJECT OF THE AGREEMENT

2.1. The Contractor undertakes to provide the Services to the Client for the broadcasting/transmission of Radio Programs set forth herein during the Service provision period (Clause 3.2 hereof) on a daily basis round-the-clock (except for 5 (Five) seconds at the top of every hour broadcast of station identification announcements inserted by Contractor for the Station and channel as required under FCC regulations, such time for such inserted announcements shall not be paid for by the Client), and the Client shall accept and pay for the Services that were properly provided in the manner stipulated in this Agreement.

Radio Programs shall be transmitted in Washington DC, USA at a frequency of 1390 kHz in the AM band via a transmitter, maximum 9 kW by day and 1 kW by night. The language of the broadcast Radio Programs shall be English.

2.2. The Client's Radio Programs shall be transferred to Satellite Galaxy-19 (97W), transponder - 20, frequency - 12060 horizontal, symbol rate- 22000, FEC- 3/4, channel "Radio CH52L".

2.3. The Parties agree that the responsibility for the delivery of the Radio Programs to the satellite lies with the Client and the responsibility for receiving the Radio Programs from the satellite lies with the Contractor.

1.9    Ссылки на пункты и приложения подразумевают Пункты и Приложения к настоящему Договору.

1.10    Указания на «**Доллары США**» или «**$**» должны приниматься в качестве ссылок на законную валюту Соединенных Штатов Америки.

1.11    Указания на «**Российский рубль**» или "РУБ."должны приниматься в качестве ссылок на законную валюту Российской Федерации.

1.12    **FCC** означает Федеральную комиссию по связи, на данный момент находящуюся по адресу: 445 12th Street SW, Washington, DC 20554, представляющая собой независимое правительственное агентство США, регулирующее внутригосударственные и международные коммуникации.

## 2. ПРЕДМЕТ ДОГОВОРА

2.1. Исполнитель обязуется предоставлять Заказчику Услуги по распространению (трансляции) указанных в Договоре Радиопрограмм в течение срока оказания Услуг (п. 3.2 Договора) ежедневно круглосуточно (за исключением 5 (Пяти) секунд в начале каждого часа вещания, для объявления названия станции и канала Исполнителем, согласно требованиям FCC, и данное время за такие вставленные объявления не оплачивается Заказчиком); а Заказчик принимает и оплачивает надлежащим образом оказанные Услуги, в порядке, указанном в Договоре.

Радиопрограммы транслируются на территории города Вашингтон, Округ Колумбия, США на частоте 1390 кГц в AM диапазоне на передатчике с разрешенной мощностью 9 кВт днем и 1 кВт ночью. Язык распространения Радиопрограмм английский.

2.2. Доставка Радиопрограмм Заказчиком осуществляется до Спутника Galaxy-19 (97Вт) транспондер - 20, частота- 12060 горизонтальная, скорость - 22000, FEC- 3/4, канал "Radio CH52L".

2.3. Стороны согласовали, что ответственность за доставку Радиопрограмм до Спутника несет Заказчик, ответственность за получение Радиопрограмм со Спутника несет Исполнитель.



2.4.The total volume of broadcasting/transmission of Radio Programs in English is 1,127 (One thousand one hundred twenty seven) days 24 (Twenty four) hours per day (except for 5 (Five) seconds at the top of every hour broadcast of station identification announcements inserted by Contractor for the Station and channel as required under FCC regulations, such time for such inserted announcements shall not be paid for by the Client).

## 3.   TERM

3.1     This Agreement shall come into force on the day of its signing stated above on the first page hereof and shall remain in effect until the obligations hereunder are fully discharged by the Parties, unless the Agreement is subject to early termination.

3.2     The Contractor shall render the Services from December 1, 2017 until December 31, 2020, unless the Agreement is subject to early termination in the manner stipulated herein (hereinafter the "Term").

## 4.   PROCEDURE FOR RENDERING THE SERVICES

4.1     The Client shall provide the Contractor Radio Programs in the manner agreed by the Parties in the Clause 2 hereof.

The Client may unilaterally change the manner and ways in which the Radio Programs are delivered without any additional payment, by notifying the Contractor in writing at least 30 (thirty) calendar days in advance.

4.2     Upon the Contractor's request in writing the Client shall provide documentary clarification in the event of a change in the Radio Program broadcasting schedule within the agreed total volume of radio programming not later than 10 (Ten) working days before such change comes into force.

4.3     The Parties may approve changes to the current Radio Program transmission schedule that do not result in changes to the total scope and cost of Services hereunder by entering into a supplementary agreement hereto. The Initiating Party must send its proposals to change the

2.4.     Общий объем распространения Радиопрограмм на английском языке 1127 (Одна тысяча сто двадцать семь) дней, 24 (Двадцать четыре) часа в сутки (за исключением 5 (Пяти) секунд в начале каждого часа вещания, для объявления названия станции и канала Исполнителем, согласно требованиям FCC, и данное время за такие вставленные объявления не оплачивается Заказчиком).

## 3.   СРОК ДОГОВОРА

3.1     Настоящий Договор вступает в силу в дату его заключения, указанную на первой странице Договора, и действует до полного исполнения Сторонами принятых на себя обязательств, если Договор не будет расторгнут досрочно.

3.2     Исполнитель обязан оказывать Услуги, начиная с «01» декабря 2017 года по «31» декабря 2020 года, если Договор не будет расторгнут досрочно, в порядке, предусмотренном настоящего Договора (далее «Срок действия»).

## 4.   ПОРЯДОК ОКАЗАНИЯ УСЛУГ

4.1     Заказчик обязан предоставлять Исполнителю Радиопрограммы в порядке, согласованном Сторонами в Пункте 2 настоящего Договора.

Заказчик может изменить порядок и способы доставки Радиопрограмм в одностороннем порядке без дополнительной оплаты, предварительно уведомив Исполнителя в письменном виде не менее чем за 30 (тридцать) календарных дней.

4.2     Заказчик по письменному требованию Исполнителя обязан предоставлять документальные разъяснения в случае изменения расписания вещания Радиопрограмм в пределах согласованного общего объема вещания, не позднее, чем за 10 (Десять) рабочих дней до вступления такого изменения в силу.

4.3     Стороны вправе согласовать между собой изменения в текущем расписании распространения Радиопрограмм без изменения общего объема и стоимости Услуг по настоящему Договору, что оформляется дополнительным соглашением к Договору.



broadcasting schedule not later than 5 (Five) working days before the expected date of such changes, and the other Party must provide a written response to such proposals within 3 (Three) business days after receiving the proposals.

Инициирующая Сторона должна направить свои предложения по изменению расписания не позднее, чем за 5 (Пять) рабочих дней до предполагаемой даты таких изменений, при этом другая Сторона должна дать письменный ответ на предложение в течение 3 (Трех) рабочих дней с момента получения предложения.

4.4     The Client may refuse to accept and pay for the Services provided by the Contractor in the event of the unsatisfactory operation of the Equipment/technical facilities used for rendering the Services, including a reduction in the transmission facilities' power, deeming this improper provision of Services, and may repudiate this Agreement by sending advance notice in writing to the Contractor not less than 5 (Five) calendar days prior to the termination of transmission, unless the Contractor cures such defects of the Service within the period specified and notifies the Client in writing that such defects have been cured. Failure to cure the defects shall be deemed as the consent of the Contractor to repudiation of the Agreement by the Client.

4.4     Заказчик вправе отказаться принять и оплатить оказанные Исполнителем Услуги в случае неудовлетворительной работы Оборудования (технических средств), используемого для оказания Услуг, включая сокращение мощности передающих средств, квалифицировав это как ненадлежащее оказание Услуг, и отказаться от дальнейшего исполнения настоящего Договора, направив предварительное письменное уведомление Исполнителю не позже, чем за 5 (Пять) календарных дней до прекращения вещания, за исключением, когда Исполнитель в указанный срок устранил такие недостатки Услуги и письменно уведомил Заказчика об устранении недостатков. Неустранение недостатков должно рассматриваться как согласие Исполнителя с отказом Заказчика от исполнения Договора.

4.5     Should the Parties need to change the agreed total scope of Services, the initiating Party shall notify the other Party in writing not later than 60 (Sixty) calendar days prior to such changes coming into effect. In this case if the Parties fail to agree on the changes to the total scope of Services, this Agreement shall be terminated by agreement of the Parties in the form of a separate amendment hereto, and the Parties shall be entitled to negotiate a new Agreement, taking into account the necessary changes.

4.5     В случае возникновения у Сторон необходимости в изменении согласованного общего объема Услуг, инициирующая Сторона направляет другой Стороне уведомление в письменной форме, но не позднее, чем за 60 (Шестьдесят) календарных дней до такого изменения; при этом, в случае недостижения Сторонами согласия на изменение общего объема Услуг, настоящий Договор подлежит расторжению по соглашению Сторон на основании отдельного дополнительного соглашения, при этом Стороны вправе провести переговоры о заключении нового Договора с учетом необходимых изменений.

4.6     The Contractor shall provide the Services to the Client in accordance with the Clause 2 to this Agreement.

4.6     Исполнитель обязан оказывать Заказчику Услуги в соответствии с Пунктом 2 настоящего Договора.

4.7     The Contractor must provide uninterrupted quality operation of the Equipment/technical facilities used for the broadcasting/transmission of the Client's Radio Programs.

4.7     Исполнитель обязан обеспечивать бесперебойную и качественную работу Оборудования (технических средств), используемого для распространения (трансляции) Радиопрограмм Заказчика.

4.8     The Contractor shall promptly inform the Client in writing of any shutdown of the technical facilities and termination of Radio Program transmission, irrespective of the reasons for such

4.8     Исполнитель обязан незамедлительно письменно уведомить Заказчика о любых случаях отключения технических средств и прекращении трансляции Радиопрограмм



shutdown.

4.9 The Contractor shall take reasonable measures to eliminate any defects or failure of the Equipment/technical facilities hindering normal operation.

4.10 The Contractor shall perform scheduled maintenance work on the Equipment as needed, but not more than once (1) in a month and only from 1:00 a.m. to 5:00 a.m., subject to prior coordination with the Client in writing. However, if the broadcast of the Radio Programs is off air due to any technical failure in any calendar month during the Term hereof which precludes the broadcast of the Programs for more than four (4) hours in any such month, the monthly fee payable to the Contractor shall be reduced by $75 (Seventy five) US dollars 24 cents per hour for each hour or part thereof during which the broadcast was off-air.

4.11 If WBL requires replacement of the Equipment with other equipment similar in feature to prevent equipment failure while broadcasting the Radio Programs, the Contractor shall notify the Client. In such case the Parties may exchange letters without entering into a supplementary agreement hereto.

4.12 The Contractor may stop the operation of the Equipment/technical facilities if required by WBL in order to prevent an emergency and to perform any recovery work with immediate notification of the Client. In this case Clauses 4.3-4.5 and 4.8 hereof shall apply.

The Contractor shall endeavor to use other equipment similar in features and quality during any recovery work on the Equipment in order to ensure uninterrupted broadcasting of the Client's Radio Programs.

4.13. The Contractor may, as agreed with the Client, engage third parties for the provision of Services under this Agreement while remaining liable to the Client for their action/omission as for its own.

независимо от причин такого отключения.

4.9 Исполнитель обязан принимать разумные меры по устранению дефектов и сбоев в работе Оборудования (технических средств), препятствующих их нормальной работе.

4.10 Исполнитель обязан проводить запланированные профилактические работы на Оборудовании по необходимости, но не более 1 раза в месяц и только в период с 01:00 до 05:00, предварительно согласовав их проведение с Заказчиком в письменной форме. Однако, в случае прекращения распространения Радиопрограмм в результате возникновения технического сбоя в любом календарном месяце в течение Срока действия Договора, в результате чего в течение такого месяца трансляция Радиопрограмм невозможна в течение более 4 (четырех) часов, причитающийся Исполнителю ежемесячный платеж уменьшается на 75 (Семьдесят пять) долларов США 24 цента за каждый полный или неполный час времени, в течение которого была приостановлена трансляция.

4.11 Если ВБЛ требуется в целях предотвращения сбоев в трансляции Радиопрограмм заменять Оборудование на другое с аналогичными параметрами Заказчик будет уведомлен об этом Исполнителем. В этом случае Стороны могут обменяться письмами без подписания дополнительного соглашения.

4.12 Исполнитель имеет право останавливать работу Оборудования (технических средств) по требованию ВБЛ для устранения внештатных ситуаций и проведения восстановительных работ с незамедлительным уведомлением Заказчика. В этом случае применяются Пункты 4.3- 4.5 и 4.8 Договора.

Исполнитель обязан сделать все возможное для подключения другого Оборудования с аналогичными параметрами в период проведения восстановительных работ на Оборудовании с целью обеспечения бесперебойной трансляции Радиопрограмм Заказчика.

4.13 Исполнитель по согласованию с Заказчиком вправе привлекать третьих лиц для оказания Услуг в соответствии с настоящим Договором, при этом оставаясь ответственным перед Заказчиком за их действия/бездействия как за свои собственные.



4.14. The Client may, independently or through third parties, monitor the broadcasting of the Radio Programs and make reference to such monitoring as evidence in the event of any dispute.

4.15. The Client and the Contractor may, at any time during the term hereof, agree on additional technical procedures or methods for the delivery of the Client's Radio Programs, or on the monitoring of the broadcast of Client's Radio Programs, to the end that the Client is assured that its Radio Programs are being duly broadcast in the Washington, DC area in accord with the Client's expectations.

4.16. The contributions to any collective rights management organizations in relation to broadcasting, cable transmission and re-broadcasting of music, its performances or soundtrack/engineering work, as parts of Radio Programs, shall be carried on in compliance with the applicable law.

4.17. The Contractor may inform the Client of any non-compliance by the Radio Programs with the laws of the territory where the Radio Programs are broadcast. The Client shall decide, within the shortest possible delay, on way to prevent violations of this kind in the future or withdraw from the Agreement without any penalties or sanctions.

## 5.   SETTLEMENT

5.1 The Client shall pay the Contractor for properly provided and accepted Services a fee equal to $ ███████████████████████

The Parties determined that the price for 1 (One) calendar month of Radio Program transmission shall be equal to ███████████████

The Parties determined that the cost of 1 (One) hour of Radio Program broadcasting amounts to ██ ████████████ for the purpose of calculating fees for less than a month.

5.2 Payments hereunder shall be effected in US

4.14   Заказчик вправе самостоятельно или с привлечением третьих лиц проводить мониторинг трансляций Радиопрограмм и ссылаться на результаты такого мониторинга в случае возникновения споров.

4.15. Заказчик и Исполнитель могут, в любое время в течение срока действия Договора, договориться о дополнительных технических процедурах и методах доставки Радиопрограмм Заказчика, либо о мониторинге трансляции Радиопрограмм Заказчика для того чтобы Заказчик был уверен, что его Радиопрограмм должным образом и в соответствии с его ожиданиями транслируются на территории г. Вашингтон, округ Колумбия.

4.16. Выплаты вознаграждения в организации по управлению правами на коллективной основе в отношении сообщения в эфир, по кабелю и ретрансляции музыкальных произведений, их исполнений и фонограмм в составе Радиопрограмм, производятся в порядке, предусмотренном применимым законодательством.

4.17. Исполнитель вправе информировать Заказчика относительно несоответствия содержания Радиопрограмм требованиям законодательства территории распространения Радиопрограмм. Заказчик обязан в максимально короткий срок принять решение о возможности недопущения таких нарушений впредь либо отказаться от дальнейшего исполнения Договора без применения к нему каких-либо санкций.

## 5. РАСЧЕТЫ СТОРОН

5.1 За надлежащим образом оказанные и принятые Заказчиком Услуги Заказчик оплачивает Исполнителю вознаграждение в размере ████████████████████

Стороны определили, что стоимость Услуг за 1 (Один) календарный месяц распространения Радиопрограмм составляет ████████████████████

Стороны определили, что при необходимости расчетов за неполный месяц стоимость услуг 1 (Одного) часа распространения (трансляции) Радиопрограмм составляет ████████

5.2   Расчеты по настоящему Договору



Dollars without invoices of payment in accordance with the following payment schedule:

| Period Covered | Payment Due | Amount in US Dollars |
|---|---|---|
| Advance payment 1 | 24.11.2017 | ████ |
| December 2017 | 25.12.2017 | |
| January 2018 | 20.02.2018 | |
| February 2018 | 15.03.2018 | |
| March 2018 | 15.04.2018 | |
| April 2018 | 15.05.2018 | |
| May 2018 | 15.06.2018 | |
| Advance Payment 2 | 15.06.2018 | |
| June 2018 | 15.07.2018 | |
| July 2018 | 15.08.2018 | |
| August 2018 | 15.09.2018 | |
| September 2018 | 15.10.2018 | |
| October 2018 | 15.11.2018 | |
| Advance Payment 3 | 15.11.2018 | |
| November 2018 | 15.12.2018 | |
| December 2018 | 25.12.2018 | |
| January 2019 | 20.02.2019 | |
| February 2019 | 15.03.2019 | |
| March 2019 | 15.04.2019 | |
| April 2019 | 15.05.2019 | |
| May 2019 | 15.06.2019 | |
| June 2019 | 15.07.2019 | |
| July 2019 | 15.08.2019 | |
| Advance Payment 4 | 15.08.2019 | ████ |

производятся в долларах США без выставления счетов на оплату в соответствии со следующим графиком платежей:

| Оплачиваемый период | Срок платежа до | Сумма в долларах США |
|---|---|---|
| Аванс 1 | 24.11.2017 | ████ |
| Декабрь 2017 г. | 25.12.2017 | |
| Январь 2018 г. | 20.02.2018 | |
| Февраль 2018 г. | 15.03.2018 | |
| Март 2018 г. | 15.04.2018 | |
| Апрель 2018 г. | 15.05.2018 | |
| Май 2018 г. | 15.06.2018 | |
| Аванс 2 | 15.06.2018 | |
| Июнь 2018 г. | 15.07.2018 | |
| Июль 2018 г. | 15.08.2018 | |
| Август 2018 г. | 15.09.2018 | |
| Сентябрь 2018 г. | 15.10.2018 | |
| Октябрь 2018 г. | 15.11.2018 | |
| Аванс 3 | 15.11.2018 | |
| Ноябрь 2018 г. | 15.12.2018 | |
| Декабрь 2018 г. | 25.12.2018 | |
| Январь 2019 г. | 20.02.2019 | |
| Февраль 2019 г. | 15.03.2019 | |
| Март 2019 г. | 15.04.2019 | |
| Апрель 2019 г. | 15.05.2019 | |
| Май 2019 г. | 15.06.2019 | |
| Июнь 2019 г. | 15.07.2019 | |
| Июль 2019 г. | 15.08.2019 | |
| Аванс 4 | 15.08.2019 | ████ |



| | | |
|---|---|---|
| August 2019 | 15.09.2019 | |
| September 2019 | 15.10.2019 | |
| October 2019 | 15.11.2019 | |
| November 2019 | 15.12.2019 | |
| December 2019 | 25.12.2019 | |
| Advance Payment 5 | 15.03.2020 | |

In the event of early termination of the Agreement, regardless of the grounds of termination, the Contractor shall within 30 (Thirty) banking days from the date of the execution of the termination agreement by both Parties or from the date of receipt by the Contractor of the written notice on termination from the Client transfer to the account of the Client the full amount of any advance received, in the amount exceeding the value of Services properly provided as of the date of termination of the Agreement.

5.3 The Contractor must provide the Client with a Services Acceptance Certificate(s) for services rendered by the 10th day of the month following the reporting period. The form of such "Services Acceptance Certificate" is attached hereto as Schedule № 1. The period(s) in which the Services shall be rendered hereunder shall be:

from 01 December, 2017 to 31 December, 2017
from 01 January, 2018 to 31 January, 2018
from 01 February, 2018 to 28 February, 2018
from 01 March, 2018 to 31 March, 2018
from 01 April, 2018 to 30 April, 2018
from 01 May, 2018 to 31 May, 2018
from 01 June, 2018 to 30 June, 2018
from 01 July, 2018 to 31 July, 2018
from 01 August, 2018 to 31 August, 2018
from 01 September, 2018 to 30 September, 2018
from 01 October, 2018 to 31 October, 2018
from 01 November, 2018 to 30 November, 2018
from 01 December, 2018 to 31 December, 2018
from 01 January, 2019 to 31 January, 2019
from 01 February, 2019 to 28 February, 2019
from 01 March, 2019 to 31 March, 2019
from 01 April, 2019 to 30 April, 2019
from 01 May, 2019 to 31 May, 2019
from 01 June, 2019 to 30 June, 2019

| | | |
|---|---|---|
| Август 2019 г. | 15.09.2019 | |
| Сентябрь 2019 г. | 15.10.2019 | |
| Октябрь 2019 г. | 15.11.2019 | |
| Ноябрь 2019 г. | 15.12.2019 | |
| Декабрь 2019 г. | 25.12.2019 | |
| Аванс 5 | 15.03.2020 | |

В случае досрочного прекращения Договора по любому основанию Исполнитель в течение 30 (Тридцати) банковских дней с даты подписания обеими Сторонами дополнительного соглашения о расторжении или с даты получения Исполнителем письменного уведомления о расторжении Договора от Заказчика перечисляет на счет Заказчика всю сумму полученного им аванса, в размере, превышающем стоимость надлежащим образом оказанных и принятых Заказчиком Услуг на дату расторжения Договора.

5.3 Исполнитель обязан предоставлять Заказчику Акт(ы) сдачи-приемки оказанных услуг до 10 (Десятого) числа месяца, следующего за отчетным периодом. Форма Акта сдачи-приемки оказанных услуг изложена в Приложении № 1 к настоящему Договору. Отчетным(и) периодом(ами) по настоящему Договору являются:

с «01» декабря 2017 г. по «31» декабря 2017 г.
с «01» января 2018 г. по «31» января 2018 г.
с «01» февраля 2018 г. по «28» февраля 2018 г.
с «01» марта 2018 г. по «31» марта 2018 г.
с «01» апреля 2018 г. по «30» апреля 2018 г.
с «01» мая 2018 г. по «31» мая 2018 г.
с «01» июня 2018 г. по «30» июня 2018 г.
с «01» июля 2018 г. по «31» июля 2018 г.
с «01» августа 2018 г. по «31» августа 2018 г.
с «01» сентября 2018 г. по «30» сентября 2018 г.
с «01 октября 2018 г. по «31» октября 2018 г.
с «01» ноября 2018 г. по «30» ноября 2018 г.
с «01» декабря 2018 г. по «31» декабря 2018 г.
с «01» января 2019 г. по «31» января 2019 г.
с «01» февраля 2019 г. по «28» февраля 2019 г.
с «01» марта 2019 г. по «31» марта 2019 г.
с «01» апреля 2019 г. по «30» апреля 2019 г.
с «01» мая 2019 г. по «31» мая 2019 г.
с «01» июня 2019 г. по «30» июня 2019 г.



| | |
|---|---|
| from 01 July, 2019 to 31 July, 2019 | с «01» июля 2019 г. по «31» июля 2019 г. |
| from 01 August, 2019 to 31 August,2019 | с «01» августа 2019 г. по «31» августа 2019 г. |
| from 01 September, 2019 to 30 September, 2019 | с «01» сентября 2019 г. по «30» сентября 2019 г. |
| from 01 October, 2019 to 31 October, 2019 | с «01 октября 2019 г. по «31» октября 2019 г. |
| from 01 November, 2019 to 30 November, 2019 | с «01» ноября 2019 г. по «30» ноября 2019 г. |
| from 01 December, 2019 to 31 December, 2019 | с «01» декабря 2019 г. по «31» декабря 2019 г. |
| from 01 January, 2020 to 31 January, 2020 | с «01» января 2020 г. по «31» января 2020 г. |
| from 01 February, 2020 to 29 February, 2020 | с «01» февраля 2020 г. по «29» февраля 2020 г. |
| from 01 March, 2020 to 31 March, 2020 | с «01» марта 2020 г. по «31» марта 2020 г. |
| from 01 April, 2020 to 30 April, 2020 | с «01» апреля 2020 г. по «30» апреля 2020 г. |
| from 01 May, 2020 to 31 May, 2020 | с «01» мая 2020 г. по «31» мая 2020 г. |
| from 01 June, 2020 to 30 June, 2020 | с «01» июня 2020 г. по «30» июня 2020 г. |
| from 01 July, 2020 to 31 July, 2020 | с «01» июля 2020 г. по «31» июля 2020 г. |
| from 01 August, 2020 to 31 August,2020 | с «01» августа 2020 г. по «31» августа 2020 г. |
| from 01 September, 2020 to 30 September, 2020 | с «01» сентября 2020 г. по «30» сентября 2020 г. |
| from 01 October, 2020 to 31 October, 2020 | с «01 октября 2020 г. по «31» октября 2020 г. |
| from 01 November, 2020 to 30 November, 2020 | с «01» ноября 2020 г. по «30» ноября 2020 г. |
| from 01 December, 2020 to 31 December, 2020 | с «01» декабря 2020 г. по «31» декабря 2020 г. |

In the event that the first and/or last month of the provision of Services is incomplete, the Reporting Period shall be the relevant part of the first and/or last calendar months ("Incomplete Reporting Period"). The fee for the Services provided in an Incomplete Reporting Period shall be proportionate to the number of days when the Services were actually provided, based on hourly rate for the broadcasting of Services, as stipulated in Clause 5.1 hereof.

Если первый и/или последний месяц оказания Услуг неполный, то Отчетным периодом признаётся соответствующая часть первого и/или последнего календарного месяца (далее – «Неполный отчетный период»). При этом оплата стоимости Услуг за Неполный отчетный период рассчитывается пропорционально фактическому количеству дней, когда оказывались Услуги, согласно стоимости оказания Услуг по трансляции в течение 1 (одного) часа по п. 5.1. Договора.

5.4 Unless the Contractor notifies the Client otherwise in writing (in this case, the term "writing" shall not include e-mail), in accordance with Clause 20 hereof, payment for Services rendered by the Contractor shall be made to the following bank account of the Contractor:

5.4 Если Исполнитель не уведомит Заказчика об ином в письменной форме (но не посредством электронной почты) в соответствии с Пунктом 20 настоящего Договора, оплата за оказанные Исполнителем Услуги производится по следующим банковским реквизитам Исполнителя:

RM Broadcasting LLC

RM Broadcasting LLC

BANK: ▮▮▮▮▮▮
ABA Bank Routing: ▮▮▮▮▮▮
Account : ▮▮▮▮▮▮
SWIFT: ▮▮▮▮▮

BANK: ▮▮▮▮▮▮
ABA Bank Routing: ▮▮▮▮▮▮
Account : ▮▮▮▮▮▮
SWIFT: ▮▮▮▮▮

5.5 The Client shall pay the Contractor only for quality and timely Services. If the Services are not provided timely and/or in full, the Contractor shall return to the Client the advance payment proportionate to the volume of Services that the

5.5 Заказчик оплачивает Исполнителю только Услуги, оказанные своевременно и качественно. В случае если Услуги по Договору будут оказаны Исполнителем не своевременно и/или не в полном объеме, Исполнитель



Contractor failed to provide and/or provided improperly.

обязуется вернуть Заказчику сумму авансового платежа, пропорционально объему не оказанных Исполнителем Услуг и/или оказанных ненадлежащим образом.

5.6 The consideration payable to the Contractor for the Services shall include all expenses that were or will be incurred by the Contractor in connection with the Services, including taxes and duties or any other mandatory contributions.

5.6. В размер вознаграждения Исполнителя за оказание Услуг включаются все расходы и затраты понесенные Исполнителем или которые должен будет понести Исполнитель в связи с оказанием Услуг Заказчику, в том числе затраты на оплату налогов и сборов, иных обязательных платежей.

5.7 If the Client fails to pay the amount due under this Agreement within a period exceeding 15 (fifteen) calendar days after the payment deadline, the Contractor may request a fine equal to 0.05% (five hundredths of a percent) of the outstanding balance per day of delay, starting the 16th (sixteen) day of delay, but not more than 10% (ten percent) of the said amount. This clause shall supersede any other provisions envisaged herein regarding non-payment of any amounts due to the Contractor, and shall be the sole liability of the Client for such delays.

5.7 Если Заказчик не оплачивает сумму, которую он обязан оплатить по Договору, в течение периода, превышающего 15 (Пятнадцати) календарных дней после наступления срока оплаты, Исполнитель вправе потребовать от него пени в размере 0,05 % (ноль целых пять сотых процента) от не оплаченной в срок суммы за каждый день просрочки, начиная с 16-го (Шестнадцатого) дня просрочки, но не более 10% (десяти процентов) от указанной суммы.

This fine for late payment shall not prevent the Contractor from exercising any other right or remedy arising from the Client's failure to pay to the Contractor amounts due under this Agreement, including, without limitation, the right to suspend providing the Services and termination of this Agreement.

Выплата неустойки за просрочку платежа не ограничивает право Исполнителя использовать другие способы или средства правовой защиты в случае неисполнения Заказчиком своей обязанности по выплате сумм вознаграждения Исполнителю в соответствии с Договором, включая, но не ограничиваясь правом приостановить оказание Услуг или расторгнуть Договор.

5.8 The Services Acceptance Certificates shall be accompanied by broadcasting reports regarding actual broadcasting of Radio Programs in the relevant reporting period in the form of the Schedule 2 hereto.

5.8 К Актам сдачи-приемки оказанных услуг прилагаются эфирные справки о фактическом распространении (трансляции) Радиопрограмм за соответствующий отчетный период по форме Приложения № 2 к Договору.

5.9 The Contractor shall deliver to the Client a valid tax residency certificate.

5.9. Исполнитель обязуется предоставить Заказчику действительную справку о налоговом статусе резидента.

## 6.   REPRESENTATIONS AND WARRANTIES

## 6. ЗАВЕРЕНИЯ И ГАРАНТИИ

6.1    Representations and Warranties of the Client:

6.1    Заверения и Гарантии Заказчика:

(a)    Form of incorporation. The Client is duly organized and validly existing under the laws of the Russian Federation, with corporate power and authority to carry on its business as it is currently being conducted and to own, lease, and operate its

(a) Организационно-правовая форма. Заказчик был должным образом учрежден и законно существует по законодательству Российской Федерации и обладает правами и полномочиями на осуществление своей



assets and property;

(b)     Authority. The Client has full power and authority under the laws of the Russian Federation to execute this Agreement and the schedules hereto, and to perform its obligations hereunder. This Agreement is duly and validly executed and delivered by the Client under the law and constitutes the legal, valid, binding and enforceable obligation of the Client in accordance with the terms and conditions hereof;

(c)     No Conflict. The execution, delivery and performance by the Client of this Agreement and compliance with the provisions thereof:

    (i)  Will not conflict with or constitute a breach of the terms or provisions of, or a default under its charter, official certificate of incorporation or by-laws;

    (ii) Will not conflict with or constitute a breach of any agreement to which the Client

(d)     Content. The Client shall be liable for the content of Radio Programs and shall hold the Contractor harmless of any documented actual losses, if the Contractor is able to prove that this loss results from the broadcasting of Radio Programs in breach of the applicable law, not exceeding the amount mentioned in Clause 7.3 of this Agreement.

(e)     The Client further agrees that, throughout the term of this Agreement, the Client shall comply with all laws, rules, regulations, policies, and procedures including, but not limited to, the FCC's technical, political broadcasting, obscenity and indecency regulations, fair trade practice regulations, lottery broadcast regulations, rules for placing sponsorship materials and any other applicable norms regarding Radio Programs. The Client shall make reasonable efforts to ensure that the content of the Radio Programs complies with the

деятельности в ее существующей форме и на владение, аренду и эксплуатацию своих активов и имущества;

(b)     Полномочия. Заказчик правомочен и должным образом уполномочен по законодательству Российской Федерации подписать настоящий Договор и приложения к нему, а также выполнить свои обязательства по настоящему Договору. Настоящий Договор надлежаще подписан Заказчиком в установленном порядке на законных основаниях и составляет законное и юридически действительное обязательство Заказчика, исполнение которого в принудительном порядке может быть истребовано с него в соответствии с условиями настоящего Договора;

(c)     Отсутствие конфликтов. Подписание и исполнение Заказчиком настоящего Договора, соблюдение им всех его положений:

    (i)  не будет противоречить и не приведет к нарушению условий или положений или к несоблюдению требований его устава, свидетельства о государственной регистрации, внутренних положений;

    (ii) не будет противоречить или представлять собой нарушение какого-либо договора, стороной которых является Заказчик

(d)     Содержание. Заказчик несет ответственность за содержание Радиопрограмм и должен компенсировать Исполнителю документально подтвержденные фактически понесенные убытки, если Исполнитель докажет, что такой ущерб причинен в связи с распространением Радиопрограмм несоответствующих применимому законодательству, но не более суммы, указанной в Пункте 7.3 настоящего Договора.

(e)     Заказчик обязуется в течение срока действия настоящего Договора соблюдать все законы, правила, постановления, политику и инструкции, включая, помимо прочего, постановления FCC, касающиеся вещания технических, политических радиопрограмм, употребления нецензурной лексики и соблюдения морально-этических норм, добросовестной деловой практики, трансляции лотерей, правил размещения спонсорских материалов, а также иные нормы и требования, применимые к вещанию Радиопрограмм.



applicable laws.

Заказчик приложит разумные усилия для обеспечения соответствия содержания Радиопрограмм нормам применимого законодательства.

6.2 Representations and Warranties of the Contractor:

6.2 Заверения и Гарантии Исполнителя:

(a) Form of incorporation. The Contractor is duly organized and validly existing under the laws of the State of Delaware, the United States of America, with corporate power and authority to carry on its business as it is currently being conducted and to own, lease, and operate its assets and property;

(a) Организационно-правовая форма. Исполнитель был должным образом учрежден и законно существует по законодательством Штата Делавэр, Соединенные Штаты Америки и обладает корпоративными правами и полномочиями на осуществление своего бизнеса в его существующей форме и на владение, аренду и эксплуатацию своих активов и имущества;

(b) Authority. The Contractor has full power and authority under the laws of the United States of America and the relevant applicable law to execute this Agreement and the schedules hereto, and to perform its obligations hereunder. This Agreement is duly and validly executed and delivered by the Contractor under the law and constitutes the legal, valid, binding and enforceable obligation of the Contractor in accordance with the terms and conditions hereof;

(b) Полномочия. Исполнитель правомочен и должным образом уполномочен по законодательству Соединенных Штатов Америки подписать настоящий Договор и приложения к нему, а также выполнить свои обязательства по настоящему Договору. Настоящий Договор надлежаще подписан и составляет законное и юридически действительное обязательство Исполнителя, исполнение которого в принудительном порядке может быть потребовано от него в соответствии с условиями настоящего Договора;

(c) Services. The Contractor warrants to the Client that:

(c) Услуги. Исполнитель гарантирует Заказчику, что:

(i) The Contractor will render the Services with reasonable skill and care in accordance with generally acceptable commercial standards;

(i) Исполнитель будет оказывать Услуги с разумной осмотрительностью и с надлежащей квалификацией, а также в соответствии с общепринятыми обычаями делового оборота;

(ii) The Services will conform with this Agreement and all descriptions and specifications provided to the Client by the Contractor; and

(ii) Услуги будут соответствовать настоящему Договору, а так же всем описаниям и спецификациям, которые предоставлены Заказчику Исполнителем; и

(iii) The Services will be rendered in accordance with all applicable laws of the United States of America. The Contractor will inform the Client as soon as it becomes aware of any changes to such laws.

(iii) Услуги будут оказываться в соответствии со всеми применяемыми положениями действующего законодательства Соединенных Штатов Америки. Исполнитель проинформирует Заказчика, как только ему станет известно о любых изменениях в таком законодательстве.

(iv) The Services will be rendered subject to the existence and under authority of all the necessary Authorization Documents held by WBL and the

(iv) Услуги будут оказываться при наличии и на основании всех необходимых Разрешительных документов со стороны ВБЛ



Contractor. The Contractor and WBL warrants that they will ensure that the Authorization Documents are valid and up-to-date throughout the period of provision of Services under Clause 3.2 hereof, and that it will provide the Client with the evidence of renewal of the expired Authorization Documents not later than the date of their expiration.

(v) In the event of the annulment, early termination or suspension of the Authorization Documents the Contractor shall immediately inform the Client of such annulment, early termination or suspension, and also reimburse to the Client the cost of Services that were not provided.

(vi) The Contractor shall broadcast/transmit Radio Programs (part/fragments) without abridging them, or any additions, editing, duplicating or other actions detrimental to the integrity of Radio Programs (their parts/fragments). The Radio Programs (their parts/fragments) shall not be interrupted by advertising. The Parties agree that this this provision is a material term hereof.

(vii) The Contractor may not transfer the rights to use Radio Programs (their parts/fragments) to third parties. The Parties agree that this this provision is a material term hereof.

(d) Responsibility. During the term of this Agreement, Contractor shall be responsible for the Station's compliance with all applicable provisions of the Communications Act, the rules, regulations, policies and procedures of the FCC, and all other applicable laws.

## 7. INDEMNIFICATION AND LIMITATION OF LIABILITY

7.1 The Client shall indemnify and hold the Contractor harmless of any documented losses awarded against, and incurred and paid by the Contractor as a result of or in connection with:

(a) infringement, at the Client's fault, of any third

и Исполнителя. При этом Исполнитель и ВБЛ гарантируют поддержание актуального статуса указанных документов в течение всего Срока оказания Услуг в соответствии с Пунктом 3.2 Договора и обязуются не позднее последнего дня срока действия Разрешительных документов предоставлять Заказчику подтверждение их пролонгации.

(v) Исполнитель обязуется незамедлительно проинформировать Заказчика в случае аннулирования, досрочного прекращения или приостановления действия Разрешительных документов, а также обязуется вернуть Заказчику пропорциональную стоимость Услуг, которые не были оказаны.

(vi) Исполнитель обязуется распространять (транслировать) Радиопрограммы (их части/фрагменты) без каких-либо сокращений, дополнений, редактирования, дублирования и иных действий способных нанести ущерб целостности Радиопрограмм (их частей/фрагментов). При этом прерывание Радиопрограмм (их частей/фрагментов) рекламой не допускается. Данное положение признается Сторонами существенным условием Договора.

(vii) Исполнитель не вправе передавать права на использование Радиопрограмм (их частей/фрагментов) третьим лицам. Данное положение признается Сторонами существенным условием Договора.

(d) Ответственность. В течение срока действия настоящего Договора Исполнитель несет ответственность за соответствие Станции всем применимым положениям Закона о средствах связи, правилам, постановлениям, политике и инструкциям FCC и всем другим применимым законам.

## 7. ВОЗМЕЩЕНИЕ УБЫТКОВ И ОГРАНИЧЕНИЕ ОТВЕТСТВЕННОСТИ

7.1 Заказчик обязан возместить Исполнителю документально подтвержденные прямые убытки, которые присуждены к возмещению Исполнителем и фактически понесены Исполнителем в результате или в связи с:

(a) нарушением по вине Заказчика прав



party's intellectual property rights/copyright or other rights related to the Client's Radio Programs

7.2 If the Contractor fails to honor guarantees stipulated in sub-clauses (iv), (vi) and (vii) of Clause 6.2(c) hereof, the Contractor shall pay the Client █████████████████████ per violation.

(d)  7.3 The total liability of the Client hereunder shall not exceed the amount of payments by the Client to the Contractor for the periods in which the relevant losses, liability, expenses or costs were incurred. In no event shall the Customer be liable for any indirect losses incurred by the Contractor in connection with the performance hereunder.

## 8. CONFIDENTIALITY

8.1. Except as may be required by applicable laws and regulations, including but not limited to the rules and policies of the FCC, the Parties shall keep in strict confidence any information, Input Material, technical or commercial know-how, specifications, inventions, processes or initiatives that are confidential in nature and have been disclosed to the other Party, its employees, agents, consultants or subcontractors, and any other confidential information concerning either Party's business which the other Party may acquire. Except as otherwise noted above, each Party shall restrict the disclosure of such confidential material to its employees, agents, lending institutions, advisors, consultants or subcontractors, and shall warrant that its employees, agents or subcontractors are subject to the same confidentiality obligations as those binding such Party.

## 9. INTELLECTUAL PROPERTY RIGHTS

9.1 No provision hereof shall be understood as transfer to the Contractor of the copyright and related rights for the Radio Programs and other Input Material. The use of the Radio Programs by the Contractor is allowed only to the extent reasonably required for performance of the

---

интеллектуальной собственности (авторских прав) любого третьего лица или других прав в отношении Радиопрограмм Заказчика

7.2. В случае нарушения Исполнителем гарантий указанных в подпунктах (iv),(vi) и (vii) пункта 6.2 (с) Договора, Исполнитель выплачивает Заказчику штраф в размере █████ ███████ Долларов США за каждый случаи нарушения.

7.3. Общий объем ответственности Заказчика по Договору не превышает сумму платежей Заказчика Исполнителю за соответствующие периоды, в которые понесены убытки, ответственность, затраты и расходы. Заказчик ни при каких обстоятельствах не несет ответственность по каким-либо косвенным убыткам, понесенным Исполнителем в связи с исполнением Договора.

## 8. КОНФИДЕНЦИАЛЬНОСТЬ

8.1. За исключением случаев, предусмотренных законами и нормами, включая, помимо прочего, нормы и политику FCC, Стороны обязаны сохранять в строгой конфиденциальности любую информацию, используемый Материал, технические или коммерческие ноу-хау, спецификации, изобретения, процессы или инициативы, которые имеют конфиденциальный характер и были раскрыты другой Стороне, ее служащими, агентами, консультантами или субподрядчиками, а также любую другую конфиденциальную информацию, связанную с деятельностью Стороны, которые может получить другая Сторона. Если иное не предусмотрено в данном Договоре, каждая из Сторон обязана ограничить раскрытие такой конфиденциальной информации своими работниками, агентами, кредитными учреждениями, советниками, консультантами или субподрядчиками, и должна гарантировать, что к ее работникам, агентам или субподрядчикам применяются обязательства конфиденциальности, соответствующие тем обязательствам, которые имеют обязательную силу для этой Стороны.

## 9. ИНТЕЛЛЕКТУАЛЬНЫЕ ПРАВА

9.1 Никакое из положений Договора не подразумевает передачу Исполнителю авторских и смежных прав на Радиопрограммы и иной Используемый материал, передаваемые в процессе исполнения Договора. Использование Радиопрограмм Исполнителем



obligations hereunder.

9.2 Unless otherwise directly approved by the Client, the authorized use of the Radio Programs includes the recording or copying required for the purpose of reception and further transmission of the Radio Program, and also storage of the copies within 1 (One) month after broadcasting. Upon expiration of the said term and also in case of termination hereof due to any reason, the Client shall delete all copies of the Radio Programs being at his disposal, except for one copy which the Contractor is entitled to use for the purpose of audit and in accordance with the obligations on keeping confidentiality specified in section 8 hereof.

9.3 The Contractor is not entitled to hand over the copies of the Radio Programs to the third parties, except for their submission to the FCC or other regulatory authorities and in other cases in accordance with the applicable laws.

## 10.  TERMINATION

10.1 Should any Party hereto consider further performance of this Agreement unreasonable for itself, that Party may notify the other Party of the termination of this Agreement in writing not later than 90 (Ninety) calendar days prior to the anticipated termination date, and in such event the Agreement shall terminate upon the expiration of this period of 90 (Ninety) days.

10.2 In case of termination of this Agreement (irrespective of the reasons for such termination), the Parties shall enter into an additional agreement concerning the termination of this Agreement. Should the Party receive such additional agreement signed by another Party, this Party shall sign it and return one copy to the initiating Party within 10 (Ten) working days, or notify the initiating Party of the disagreement on the text of received additional agreement within 10 (Ten) working days.

---

допускается только в объеме, объективно необходимом в целях исполнения своих обязательств по Договору.

9.2 Если иное прямо не согласовано Заказчиком, разрешенное использованием Радиопрограмм может быть запись их на носитель (или копирование), необходимая в целях приема и дальнейшей трансляции Радиопрограмм, а также хранение копий в течение I (Одного) месяца с момента их выхода в эфир. По истечении данного срока, а также в случае расторжения Договора по любой причине Исполнитель должен удалить все имеющиеся у него копии Радиопрограмм, за исключением одной копии, которую Исполнитель имеет право использовать только в целях аудита и в соответствии с обязательствами по обеспечению конфиденциальности, которые изложены в Пункте 8 настоящего Договора.

9.3 Исполнитель не имеет права передавать копии Радиопрограмм третьим лицам, за исключением случаев их предоставления контролирующим органам и в иных случаях, предусмотренных применимым законодательством.

## 10. РАСТОРЖЕНИЕ ДОГОВОРА

10.1 В случае если какая-либо Сторона сочтет нецелесообразным для себя дальнейшее исполнение настоящего Договора, то такая Сторона может направить другой Стороне в письменной форме уведомление о расторжении Договора не позднее, чем за 90 (Девяносто) календарных дней до предполагаемой даты расторжения и в таком случае Договор должен быть расторгнут по истечении данных 90 (Девяноста) дней.

10.2 В случае расторжения настоящего Договора (вне зависимости от основания) Стороны обязаны составить дополнительное соглашение о расторжении настоящего Договора. Сторона, получившая подписанное другой Стороной дополнительное соглашение о расторжении настоящего Договора, должна подписать его со своей стороны и вернуть один экземпляр другой Стороне в течение 10 (Десяти) рабочих дней, либо в течение 10 (Десяти) рабочих дней сообщить о своем несогласии с текстом полученного дополнительного соглашения.



10.3. In accordance with the provision of Clause 3.2 and without prejudice to any other rights or remedies that may be available to the Parties, either Party may promptly terminate this Agreement without any liability to the other Party by notifying the other Party in writing in the following cases:

(a)     The other Party fails to pay any amount due under this Agreement on the payment due date and remains in default for at least 15 (seven) days after being notified in writing to make such payment past the payment due date; or

(b)     The other Party is in breach of any of the material provisions of this Agreement and (if such breach is rectifiable) fails to rectify such breach within 10 (Ten) days of such Party being notified in writing to rectify such breach; or

(c)     A claim is filed with a court or a court issues a ruling on the appointment of an administrator, a notice of intention to appoint an administrator is given, or an administrator is appointed in respect of the other Party; or

(d)     A creditor or other party claiming an encumbrance on the property of the other Party attaches or takes possession of, or arranges for distraint, seizure, confiscation, arrest or other such process to be levied, enforced, applied or served in respect of the whole or any part of its assets and such attachment or process is not settled within 14 (Fourteen) days.

10.4  Should the Contractor breach the warranty specified in Clause 6.2(c)(iv) hereof, the date of expiration of the Authorization Documents shall be considered as the last day of provision of Services, and neither Contractor`s actions taken after that date shall be deemed as the provision of Services and paid for, and this Agreement shall be terminated by the Parties not later than the closing date of the then-current reporting period according to Clause

10.3 В соответствии с положением Пункта 3.2 и без ограничения любых других прав или средств правовой защиты, которые могут иметь Стороны, любая Сторона вправе незамедлительно расторгнуть настоящий Договор без какой-либо ответственности перед другой Стороной, направив письменное уведомление другой Стороне, если:

(a)     другая Сторона не оплатит любую сумму, причитающуюся с нее по настоящему Договору, на дату, установленную для оплаты, и продолжает не оплачивать ее, как минимум, в течение 15 (Семи) дней с момента получения письменного уведомления о том, что ей необходимо произвести такую оплату после наступления срока оплаты; или

(b)     другая Сторона совершает нарушение любого существенного условия настоящего Договора и (если такое нарушение устранимо) не устраняет такое нарушение в течение 10 (Десяти) дней с момента получения такой Стороной письменного уведомления о необходимости устранения такого нарушения; или

(c)     в суд направлено заявление или судом вынесено постановление о назначении управляющего, направлено уведомление о намерении назначить управляющего, либо назначен управляющий в отношении другой Стороны; или

(d)     кредитор или другое лицо, обременяющее имущество другой Стороны, изымает или завладевает, либо осуществляет удержание, изъятие, конфискацию, арест или другое аналогичное производство; возбуждено, применено или предъявлено к исполнению в отношении всех или любой части ее активов, и такое изъятие или производство не урегулировано в течение 14 (Четырнадцати) дней.

10.4  В случае несоблюдения Исполнителем гарантий, указанных в Пункте 6.2(c)(iv) Договора, последний день действия Разрешительных документов считается последним днем оказания Услуг, никакие действия Исполнителя, совершенные после прекращения действия Разрешительных документов, не признаются оказанием Услуг и не оплачиваются Заказчиком, а настоящий Договор подлежит расторжению Сторонами не



5.2 hereof.

10.5  In the event that the Client can no longer provide the programming to Contractor for transmission, regardless of cause, the Client may terminate this Agreement upon ninety (90) days prior notice to Contractor.

10.6  Upon termination of this Agreement (irrespective of the reasons for such termination) the rights and obligations of the Parties as of the termination date, as well as the following Clauses of this Agreement shall survive and remain in full force and effect:

(a)  Clause 7;

(b)  Clause 8;

(c)  Clause 9;

(d)  Clause 10;

(e)  Clause 21; and

(f)  Clause 22.

## 11.  LEGAL REMEDIES

11.1. If any Services are not rendered in accordance with the provisions of this Agreement, or the Contractor–fails to comply with any terms of this Agreement, the Client shall be entitled (without prejudice to any other right or remedy) to exercise any one or more of the following rights or remedies:

(a)  To terminate this Agreement; or

(b)  To refuse to accept or pay the Services rendered by the Contractor and to require the immediate repayment by the Contractor of all advance sums for the current month paid by the Client to the Contractor under this Agreement (prorated as necessary for any days during the month in which the Services were provided); or

(c)  In any case, to claim such damages as it may have suffered in connection with the Contractor's breach (or breaches) of this Agreement not otherwise covered by the provisions of this Clause. The provisions of this Section 11 do not prevent the Client from using its rights to additional remedies stipulated in this

позднее окончания текущего отчетного периода в соответствии с п.5.2 Договора.

10.5  В случае, когда Заказчик прекращает доставлять Исполнителю Радиопрограммы для трансляции, независимо от причины, Заказчик имеет право расторгнуть Договор путем направления Исполнителю письменного уведомления за 90 (девяносто) дней до расторжения.

10.6  При расторжении настоящего Договора (независимо от основания его расторжения) права и обязательства Сторон на дату расторжения, а также ниже перечисленные пункты настоящего Договора сохраняют полную силу:

(a)  Пункт 7;

(b)  Пункт 8;

(c)  Пункт 9;

(d)  Пункт 10;

(e)  Пункт 21; и

(f)  Пункт 22.

## 11.  СРЕДСТВА ПРАВОВОЙ ЗАЩИТЫ

11.1. Если Услуги не оказаны в соответствии с условиями настоящего Договора, или Исполнитель не соблюдает любые условия настоящего Договора, Заказчик имеет право (без ограничения любого другого права и средства правовой защиты) осуществить любое право или несколько из следующих прав или средств правовой защиты:

(a)  расторгнуть настоящий Договор; или

(b)  отказаться принять и оплатить оказанные Услуги Исполнителем и потребовать незамедлительной выплаты Исполнителем всех сумм за текущий месяц, предварительно заплаченных Заказчиком Исполнителю по настоящему Договору (по мере необходимости в любой день месяца, в котором были оказаны услуги); или

(c)  в любом случае потребовать возмещения убытков, которые могут возникнуть в связи с нарушением Исполнителем (или нарушениями) настоящего Договора, к которым не применяются по другим основаниям положения настоящего Пункта. Положения настоящего Раздела 11 не



Agreement and/or by applicable law.

отменяют право Заказчика на использование дополнительных средств правовой защиты, предусмотренных настоящим Договором и/ или применимым правом.

## 12. FORCE MAJEURE

## 12. ФОРС-МАЖОР

12.1. The Parties reserve the right to postpone the date for performance of, or payment for, the Services, or to terminate this Agreement, if it is prevented from, or delayed in, carrying on its business by acts, events, omissions or accidents beyond its reasonable control, i.e. force majeure circumstances, including strikes, lockouts or other labor disputes, utility service or transport network failures, war, riot, civil commotion, malicious damage, any law or governmental order, rule, regulation or direction, accident, fire, flood, storm.

12.1. Стороны сохраняют за собой право отложить дату выполнения Услуг или оплаты за Услуги, или расторгнуть настоящий Договор, в случае полной или временной неспособности осуществлять свою деятельность, по причине действия обстоятельств непреодолимой силы, т.е. действий, обстоятельств, упущений или происшествий, препятствующих выполнению обязательств и выходящих за рамки разумного контроля Сторон, в том числе забастовки, локауты или другие трудовые споры, сбои в работе коммунальных служб или транспортных сетей, война, восстание, гражданское волнение, злоумышленное причинение ущерба, любой закон или правительственное постановление, правило, решение или указание, несчастный случай, пожар, наводнение, шторм.

The occurrence and cessation of force majeure circumstances and their duration shall be corroborated by a document issued by an authorized agency in the country where the events in question occurred. No documentary proof of the occurrence, cessation or duration of these circumstances shall be necessary, if these events are a fact of common knowledge for the Parties and are recognized as such.

Возникновение, прекращение обстоятельств непреодолимой силы и их продолжительность должны быть подтверждены документом, выданным органом, уполномоченным на выдачу соответствующего документа, страны, в которой имели место указанные события. Документальное подтверждение возникновения, прекращения и продолжительности таких обстоятельств не требуется, если данные обстоятельства фактически являются и признаются обеими Сторонами общеизвестными.

The Party affected by force majeure circumstances and/or their consequences shall notify the other Party in writing of the occurrence of force majeure and/or its consequences and how it affects performance hereunder, the approximate duration and provide documents within 10 (ten) business days from the occurrence of force majeure, or from the date when the affected Party was supposed to learn about their occurrence. If the Party was prevented from sending a timely notification by force majeure circumstances, the notification shall be sent within 3 (three) business days after it becomes possible.

Сторона, подвергшаяся действию обстоятельств непреодолимой силы/их последствий, обязана в письменной форме уведомить вторую Сторону о наступлении форс-мажорных обстоятельств/их последствий, влиянии на исполнение обязательств по Договору, предположительном сроке действия и представить подтверждающие документы в течение 10 (Десять) рабочих дней с даты наступления обстоятельств непреодолимой силы, либо с даты, когда Сторона, подвергшаяся действию обстоятельств непреодолимой силы, должна была узнать об их наступлении. Если сами форс-мажорные обстоятельства препятствовали своевременному извещению, уведомление должно быть направлено в течение 3 (Трех) рабочих дней с момента, когда это стало возможным.



## 13. AMENDMENTS

No amendments to this Agreement or to any of the documents referred to therein shall be valid unless they are in writing and executed in hard copy and signed by the Parties or their authorised representatives.

## 14. WAIVER

14.1 Failure to exercise or apply, or any delay in exercising or applying any right or remedy provided under this Agreement or by law shall not constitute a waiver of such (or any other) right or remedy, nor shall it preclude or restrict any further exercise of such (or any other) right or remedy.

14.2 No single or partial exercise or application of any right or remedy provided hereunder or by law shall preclude or restrict the further exercise or application of such right or remedy.

14.3 A waiver (which may be conditional) of any right or remedy provided under this Agreement or by law shall only be effective if it is in writing. Such waiver shall apply only to the party to whom it is addressed and for the specific circumstances for which it is given. It shall not prevent the Party that has given the waiver from subsequently relying on the right or remedy in other circumstances.

14.4 Unless specifically provided otherwise, the rights arising under this Agreement are cumulative and do not exclude the rights given under the law.

## 13. ВНЕСЕНИЕ ИЗМЕНЕНИЙ В НАСТОЯЩИЙ ДОГОВОР

Любое изменение настоящего Договора или любого документа, упомянутого в нем, будет иметь силу, только если такое изменение сделано в письменной форме на бумажном носителе и подписано каждой Стороной или уполномоченными представителями Сторон.

## 14. ДОБРОВОЛЬНЫЙ ОТКАЗ ОТ ОСУЩЕСТВЛЕНИЯ ПРАВ И СРЕДСТВ ПРАВОВОЙ ЗАЩИТЫ

14.1 В случае неосуществления или неприменения, либо в случае любой задержки в осуществлении или применении любого права или средства правовой защиты, предусмотренного настоящим Договором или законодательством, такое неосуществление или задержка не будет считаться добровольным отказом от них (или любых из них). Такой отказ не будет препятствовать или ограничивать дальнейшее осуществление такого права или средства правовой защиты (или любых из них).

14.2 Ни один единичный случай осуществления или частичного осуществления, либо применение любого права или средства правовой защиты, предусмотренного настоящим Договором или законодательством, не должно препятствовать или ограничивать дальнейшее осуществление или применение такого права или средства правовой защиты.

14.3 Любой отказ (который может быть дан при соблюдении некоторых условий) от какого-либо права или средства правовой защиты, предусмотренного настоящим Договором или законом, имеет силу только в случае предоставления в письменном виде. Такой отказ от права применяется только в отношении стороны, которой дан и при условии соблюдения указанных обстоятельств, при которых он предоставлен. Предоставление такого отказа не должно препятствовать Стороне, предоставившей отказ от права, от возможности рассчитывать на применение права или средства правовой защиты в будущем при возникновении других обстоятельств.

14.4 За исключением тех случаев, в которых предусмотрено иное, права, возникающие по настоящему Договору, являются совокупными



и не исключают права, предусмотренные законодательством.

### 15.  SEVERABILITY

If any provision of this Agreement (or part of any provision) is found by any court or other authority of competent jurisdiction to be invalid, illegal or unenforceable, such provision or part thereof shall, to the extent required, be deemed not to constitute part of this Agreement, and the validity and enforceability of the other provisions of the Agreement shall not be affected.

### 15.  ДЕЛИМОСТЬ ПОЛОЖЕНИЙ ДОГОВОРА

Если любое положение настоящего Договора (или часть любого положения) будет признано судом или другим компетентным органом надлежащей юрисдикции недействительным, незаконным или неисполнимым в судебном порядке, то такое положение или его часть, если это необходимо, не будет считаться частью настоящего Договора, и это не повлияет на законность и исполнимость в судебном порядке остальных положений настоящего Договора.

### 16.  ENTIRE AGREEMENT

16.1 This Agreement contains the whole agreement between the Parties and supersedes all prior agreements and understandings with respect to the subject matter hereof.  Any variation of this Agreement must be in writing and signed by each of the Parties.

16.2 Either Party acknowledges that, in entering into this Agreement and the documents referred to therein, it has not relied on any statement, representation, assurance or warranty of any person (whether a Party to this Agreement or not) other than as expressly set out in this Agreement. Each Party agrees that the only remedies available to it arising out of or in connection with this Representation shall be the remedies related to the breach of contract as expressly provided in this Agreement.

16.3 Nothing in this Clause shall limit or exclude any liability for fraud.

### 16.  ПОЛНОТА ДОГОВОРА

16.1 Настоящий Договор содержит полный объем договоренностей между Сторонами и заменяет собой все предыдущие договоренности и соглашения в отношении его предмета. Настоящий Договор может быть изменен только в письменной форме и за подписью каждой из Сторон.

16.2 Каждая Сторона признает, что, заключая настоящий Договор и подписывая документы, которые в нем упомянуты, она не полагается ни на какое заявление, представление, гарантию или заверение любого лица (будь Сторона по настоящему Договору или любое другое лицо), кроме тех, которые в четкой форме изложены в настоящем Договоре. Каждая Сторона согласна с тем, что единственно доступными для нее средствами правовой защиты, которые возникают из настоящего Заверения или в связи с ним, являются средства правовой защиты, обусловленные нарушениями Договора, как это в четкой форме оговорено в настоящем Договоре.

16.3 Ни одно положение в настоящем Пункте не ограничивает и не исключает любую ответственность за мошенничество.

### 17.  ASSIGNMENT

Neither Party shall assign, transfer, encumber, pledge or enter into any transactions with respect to all or any of its rights or obligations under this Agreement without the prior written consent of the other Party.

### 17. УСТУПКА ДОГОВОРА

Ни одна из Сторон не должна, без предварительного письменного согласия другой Стороны, переуступать, передавать, обременять, передавать в залог или заключать любые сделки со всеми или с любыми своими



правами или обязательствами по настоящему Договору.

## 18. NO PARTNERSHIP OR AGENCY

Nothing in this Agreement is intended to or shall operate to create a partnership between the Parties or to authorize either Party to act as agent for the other. Furthermore, neither Party shall have authority to act for or on behalf of or otherwise to bind the other in any way (including, but not limited to, the making of any representation or warranty, the assumption of any obligation or liability and the exercise of any right or power).

## 19. RIGHTS OF THIRD PARTIES

The Parties do not intend that any terms of this Agreement shall be enforceable by any person who is not a Party to this Agreement.

## 20. NOTICES

20.1 Any notice or other communication given or made to a Party under or in connection with this Agreement:

(a)     Shall be in writing in the English language;

(b)     Shall be signed by or on behalf of the sending Party;

(c)     Shall be sent for the attention of the person, at the address or fax number specified in this Clause (or to such other address, fax number or person as the respective Party may notify to the other, in accordance with the provisions of this Clause); and

(d)     Shall be:

    (i)   Delivered personally; or

## 18. ИСКЛЮЧЕНИЕ ПАРТНЕРСКИХ ОТНОШЕНИЙ МЕЖДУ СТОРОНАМИ КАК ОТНОШЕНИЙ МЕЖДУ ПРИЦИПАЛОМ И АГЕНТОМ

Ни одно положение в настоящем Договоре не предполагает или не применяется в том смысле, что оно создает партнерство между Сторонами, либо уполномочивает одну из Сторон выступать в качестве агента другой Стороны. При этом ни одна Сторона не имеет полномочий выступать от имени или по поручению, либо прочим образом налагать обязательства на другую Сторону (и в том числе путем любого заявления или гарантии, путем принятия на себя любого обязательства или ответственности и путем осуществления любого права или исполнения любого полномочия).

## 19. ПРАВА ТРЕТЬИХ ЛИЦ

Стороны не планируют, что какие-либо условия настоящего Договора могут быть принудительно исполнены каким-либо лицом, не являющимся Стороной настоящего Договора.

## 20. УВЕДОМЛЕНИЯ

20.1 Уведомление или другое сообщение, направленное одной из Сторон по настоящему Договору или в связи с ним:

(a)     должно быть составлено в письменной форме на английском языке;

(b)     должно быть подписано той Стороной или от имени той Стороны, которая его направила;

(c)     должно быть выслано на имя того лица, на адрес или номер факса, указанный в настоящем пункте (или на такой другой адрес, номер факса или на имя такого другого лица, реквизиты которых такая Сторона может сообщить другой Стороне, в соответствии с положениями настоящего Пункта); и

(d)     должно быть:

    (i) вручено лично; или



(ii)  Sent by commercial courier;

(iii)  Sent by e-mail.

20.2  The addresses for the service of notices are as follows:

(a)  If to the Contractor:

(i)  address:

101 Waters Edge Drive, Jupiter, Florida, 33477

(ii)  attention:  Arnold Ferolito

(iii)  e-mail: afsilverfox@att.net

(b)  If to the Client:

(i)  address:, Zubovskij blvd, 4, Moscow, Russia, 119021

(ii)  attention: Galina Ivanovna Kozhina

(iii)  email: n.kucherov@rian.ru.

20.3  If a notice or other communication has been duly sent or delivered in accordance with this Clause, it shall be deemed to have been duly received or made as follows:

(a)  If delivered personally, at the time of delivery; or

(b)  If delivered by commercial courier, at the time of signature of the courier's receipt; or

(c)  If sent by fax, at the time of transmission.

20.4  For the purposes of this Clause:

(a)  All times are to be read as local time in the place of receipt; and

(b)  If the time of the expected delivery under this Clause does not fall within business hours

(ii) отправлено коммерческой курьерской службой;

(iii) отправлено по электронной почте.

20.2  Адрес для вручения уведомления предусмотрен следующий:

(a)  Исполнитель:

(i) адрес:

101 Waters Edge Drive, Jupiter, Florida, 33477

(ii) на имя: Arnold Ferolito

(iii) электронная почта: afsilverfox@att.net

(b)  Заказчик:

(i) адрес: 119021 Россия, г. Москва, Зубовский бульвар,  д. 4

(ii) на имя: Галина Ивановна Кожина

(iii) электронная почта: n.kucherov@rian.ru.

20.3  Если уведомление или другое сообщение было надлежащим образом отправлено или доставлено в соответствии с настоящим Пунктом, оно будет считаться полученным, как указано ниже:

(a)  если вручено лично, то в момент доставки; или

(b)  если доставлено коммерческой курьерской службой, то в момент подписания квитанции курьера;

(c)  если отправлено по факсу, то в момент его передачи.

20.4  В контексте настоящего Пункта:

(a)  все случаи, в которых указано время, следует читать как местное время по месту получения; и

(b)  если время предполагаемого получения в соответствии с настоящим Пунктом не



(meaning 9.00 am to 5.30 pm Monday to Friday on a day that is not a public holiday in the place of receipt), the notice is deemed to be received at the business day.

20.5 If the notification or any other communication cannot be delivered (the receiving Party refuses receipt of a notice or is absent) in any of the abovementioned ways using the provided addresses, the sending Party shall be deemed to have duly performed its delivery obligations by proving that

(a)     If sent by fax, the notice or other communication was transmitted to the fax number of the respective Party; or

(b)     If sent by post, the envelope containing the notice or other communication was properly addressed and posted.

20.6 The provisions of this Clause 20 shall not apply to the service of any copies of process documents pertaining to any legal action or legal proceedings.

20.7 A notice or other communication that must be delivered under or in connection with this Agreement shall not be validly served if sent by e-mail.

20.8 The latest updates on problems related to the delivery of the Client's programs or their broadcast (including the failure to broadcast over the communication channels) shall be provided by the Contractor's responsible officer to the Client's representative using the contact details specified in Schedule No. 3.

## 21. DISPUTE RESOLUTION

21.1 Should any dispute arise in connection with this Agreement, the authorized representatives of the Parties must, within 10 (Ten) days of receipt of a written request from one Party to the other, conduct negotiations and take all reasonable efforts to resolve the dispute in good faith. The claims procedure shall be mandatory. The term for answering a claim shall be 10 (ten) business days.

---

является рабочим временем (то есть не в течение периода с 9.00 утра до 17.30 вечера, с понедельника по пятницу, в день не являющийся выходным днем по месту получения), уведомление считается полученным на начало следующего рабочего дня по месту получения.

20.5     В случае если уведомление или другое сообщение невозможно будет доставить (Сторона-получатель отказывается принять уведомление, адресат отсутствует) ни одним из вышеперечисленных способов по указанным адресам, Сторона-отправитель будет считаться надлежаще выполнившей обязательство по доставке, доказав что:

(a)     если оно выслано по факсу - что уведомление или другое сообщение было передано на номер факса надлежащей Стороны; или

(b)     если оно отправлено почтой - на конверте с уведомлением или другим сообщением указан надлежащий адрес, и что он был сдан в почтовое отделение.

20.6     Положения Пункта 20 не применяются к доставке копий процессуальных документов по любому судебному иску или по любым судебным разбирательствам.

20.7     Уведомление или другое сообщение, которое необходимо вручить по настоящему Договору или в соответствии с ним, не будет надлежащим образом доставлено, если оно выслано по электронной почте.

20.8     Оперативная информация о проблемах подачи программ Заказчика либо о проблемах трансляции программ Заказчика (в том числе о ее отсутствии в каналах подачи) должна передаваться дежурным Исполнителя представителю Заказчика по контактным данным, отраженным в Приложении № 3.

## 21. УРЕГУЛИРОВАНИЕ СПОРОВ

21.1     Если возникает любой спор в связи с настоящим Договором, то уполномоченные представители Сторон обязаны в течение 10 (Десяти) дней с момента получения письменного запроса одной из Сторон провести переговоры и предпринять все усилия по добросовестному урегулированию спора. Претензионный порядок урегулирования спора



21.2   No Party may initiate any court proceedings in accordance with the Clause 22 in relation to any dispute arising out of this Agreement if it has not attempted to settle this dispute through negotiations.

21.3   This Agreement is made in two copies in Russian and English, however, it is expressly agreed that the English version shall govern and prevail. It is further expressly agreed that English shall be the official language of all communications and transactions arising under this Agreement and in furtherance of the transactions set forth and contemplated by this Agreement.

## 22.  GOVERNING LAW AND JURISDICTION

22.1   This Agreement and all matters or issues collateral thereto will be construed in accordance with the laws of the State of New York, the United States of America, applicable to contracts fully to be performed therein without giving effect to principles governing choice of laws, irrespective of the domicile or residence of any party or the place of execution of this Agreement by any party or the place of performance of any of the terms hereof.

22.2   The parties hereto, for the purpose of resolving any claims, controversies or other matters arising under this Agreement, hereby consent to the jurisdiction of the courts of the State of New York and the United States District Court for the District of New York, waive the claim of forum non convenience in connection with any action arising hereunder that are brought in the aforementioned courts, and agree that service of process may be made upon them in the manner specified above for the giving of notice.

---

обязателен. Срок ответа на претензию – 10 (десять) рабочих дней.

21.2   Ни одна Сторона не вправе направить заявление в суд в соответствии с Пунктом 22 в отношении любого спора, возникшего из настоящего Договора, если она не попыталась урегулировать такой спор путем переговоров.

21.3   Настоящий Договор заключен в двух экземплярах на русском и английском языках, тем не менее, настоящим Стороны безоговорочно выражают свое согласие с тем, что английский вариант является преобладающим и регулирующим. Далее Стороны безоговорочно соглашаются с тем, что английский язык является официальным языком ведения корреспонденции и проведения сделок, возникающих по данному Договору и сопутствующей свершению сделок, упомянутых и предусмотренных настоящим Договором.

## 22.   ПРИМЕНИМОЕ ПРАВО И ПОДСУДНОСТЬ

22.1   Настоящий Договор и все предметы, вопросы, собранные в нем должны толковаться в соответствии с законами Штата Нью-Йорк, Соединенные Штаты Америки, действующим в отношении контрактных обязательств, принятых по настоящему Договору, без нарушения принципов права свободного выбора регулирующих законов, независимо от домициля или места нахождения любой из сторон или места исполнения настоящего Договора, или места выполнения любого из условий настоящего Договора.

22.2   Настоящим, в целях урегулирования каких-либо претензий, противоречий или других вопросов, возникающих из настоящего Договора, Стороны соглашаются с правомочностью юрисдикции Штата Нью-Йорк и Окружного Суда Соединенных Штатов Округа Нью-Йорк, отказываются от предъявления претензий в связи с тем, что судебная инстанция является не удобной в связи с инициацией каких-либо действий по настоящему Договору в вышеуказанных судах и соглашаются с тем, что вручение судебного постановления может быть произведено способом, указанным выше в отношении вручения уведомления.



| 23. ACCOUNT INFORMATION | 23. БАНКОВСКИЕ РЕКВИЗИТЫ |
|---|---|

**RM Broadcasting LLC**

BANK: ███████████

ABA Bank Routing: ███████████

Account : ████████████

SWIFT: ████████

████████████

█ ███████████████████ █

Account № ████████████

Account With Institution: ████████

VERNADSKOE BRANCH 7970 Moscow, Russia

SWIFT: ████████

Receiver's correspondent: ███████████

████████

SWIFT: █████

**RM Broadcasting LLC**

BANK: ███████████

ABA Bank Routing: ███████

Account : █████████

SWIFT: ███████████

███████████████████████

Текущий счет № ████████████

Банк: ███████

ВЕРНАДСКОЕ ОТДЕЛЕНИЕ 7970 Москва, Россия

SWIFT: ████████

Банк-Корреспондент: ███████████████

SWIFT: █████████

---

**IN WITNESS WHEREOF**, this Agreement is executed by the Parties at the date first above written.

**В СВИДЕТЕЛЬСТВО ВЫШЕИЗЛОЖЕННОГО** настоящий Договор подписан Сторонами в дату, указанную выше.

Contractor:

**RM Broadcasting LLC**

By. _____

Name: Arnold Ferolito

Title: President

Исполнитель:

**RM Broadcasting LLC**

Подпись: _____

ФИО: Arnold Ferolito

Должность: Президент

Client:

**Rossiya Segodnya**

Name: Galina Ivanovna Kozhina

Title: First Deputy General Director

Power of attorney No. 01/10-17 dated 30.12.2016

Заказчик:

**МИА «Россия сегодня»**

Подпись: _____

ФИО: Галина Ивановна Кожина

Должность: Первый заместитель Генерального директора

Доверенность № 01/10-17 от 30.12.2016



Schedule № 1/Приложение № 1
to Agreement No. *0470/PC/2017* of *17. 11. 2017*к
Договору № *0470/PC/2017* от *17. 11. 2017*

| | |
|---|---|
| **START OF FORM** | **НАЧАЛО ФОРМЫ** |
| **SERVICES ACCEPTANCE CERTIFICATE:** | **АКТ СДАЧИ-ПРИЕМКИ ОКАЗАННЫХ УСЛУГ:** |
| «____» _____ 2017 | «____» _____ 2017 г. |

We, the undersigned, Arnold Ferolito – President of **RM Boradcasting LLC**, (Contractor) and First Deputy General Director of Rossiya Segodnya (Client) Galina Ivanovna Kozhina, execute this Acceptance Certificate confirming that in the period of _____ 20__ the Parties fulfilled all their obligations under Agreement № _____ dated _____.

Мы, нижеподписавшиеся, Arnold Ferolito – Президент Компании **RM Boradcasting LLC** (Исполнитель), и Первый заместитель Генерального директора **МИА «Россия сегодня»** (Заказчик), Кожина Галина Ивановна, составили настоящий Акт о том, что в _____ 20__ года условия Договора № _____ от _____ г. обеими сторонами выполнены полностью.

The services for the broadcasting/transmission of radio programs were provided in full, in due course and with appropriate quality. The Client has no further claims with respect to the rendered Services.

Услуги по распространению (трансляции) Радиопрограмм в период с _____ по _____ оказаны в соответствии с условиями Договора, полном объеме, своевременно, с надлежащим качеством. По оказанным услугам Заказчик претензий не имеет.

The price of the executed services is _____ (_____) US Dollars.

Стоимость оказанных услуг составила _____ (_____) долларов США.

This Certificate is executed in two copies. The Russian and English versions of this Certificate shall have the equal legal effect.

Настоящий акт составлен в двух экземплярах, оба текста на русском и английском языках имеют одинаковую юридическую силу.

**Signed by:**

**Подписи Сторон:**

**END OF FORM**

**КОНЕЦ ФОРМЫ**

**SIGNATURES OF THE PARTIES:**

**ПОДПИСИ СТОРОН:**

Contractor:

Исполнитель:

**RM Broadcasting LLC**

**RM Broadcasting LLC**

By: _____

Подпись: _____

Name: Arnold Ferolito

ФИО: Arnold Ferolito

Title: President

Должность: Президент

Client:

Заказчик:

**Rossiya Segodnya**

**МИА «Россия сегодня»**

By: _____

Подпись: _____

Name: Galina Kozhina

ФИО: Галина Ивановна Кожина

Title: First Deputy General Director

Должность: Первый заместитель Генерального директора

to Agreement No. _0780_ /к/_2017_ of _17.11.2017_ /к Договору № _0780_ /к/_2017_ от _17.11.2017_

Schedule 2/Приложение № 2

Pursuant to Clause 5.8 of the Agreement, the Parties agree on the following broadcasting report form/Во исполнение п. 5.8 Договора, Стороны согласовали следующую форму эфирной справки

BEGINNING OF FORM/ НАЧАЛО ФОРМЫ

**Broadcasting report/Эфирная справка**

on distribution (broadcasting) of Rossiya Segodnya Radio Programs under Agreement No._____ dated "___" _____ 20__ /по распространению (трансляции) радиопрограмм МИА «Россия сегодня» по Договору № _____ от «___» _____ 20__ года

Reporting period: from _____ to _____ /Отчетный период: с _____ по _____

| № п/п | Country/ transmitter location Страна/ населенный пункт установки передатчика | Coverage area (of Radio Programs distribution)/ Зона покрытия (распространения Радиопрограмм) | Frequency Частота вещания | Media title/ Наименование СМИ | Radio Program title/ Наименование Радиопрограммы | Language of distribution (broadcasting)/ Язык распространения (трансляции) | Schedule of distribution (broadcasting)/ График распространения (вещания) | Days of distribution (broadcasting)/ Количество дней распространения/ (вещания) | Hours of distribution (broadcasting), daily average/ Количество часов распространения(т ляции) (среднесуточно) |
|---|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | | |
| | | | | | | | TOTAL/ ИТОГО | | |

The Contractor confirms that the Radio Programs were distributed (broadcasted) according to schedule attached to this Agreement and other significant conditions of the Agreement and schedules hereto/Исполнитель подтверждает, что Радиопрограммы распространялись (транслировались) в соответствии с графиком – приложение к Договору, иными существенными условиями Договора и приложений к нему.

The Contractor /Исполнитель: _____

date/дата

END OF FORM/КОНЕЦ ФОРМЫ

ПОДПИСИ СТОРОН/SIGNATURES OF THE PARTIES
The Contractor / Исполнитель: RM Broadcasting LLC

Ву/Подпись: _____

Name/ФИО: Arnold Ferolito
Title/Должность: President / Президент

The Client /Заказчик: МИА «Россия сегодня»

Ву/Подпись _____

Name /ФИО: Galina Kozhina/ Галина Ивановна Кожина
Title/Должность: First Deputy General Director/ Первый заместитель Генерального директора
Power of attorney № 01/10-17 dated 30.12.2016/ Доверенность № 01/10-17 от 30.12.2016



to Agreement No. D/D/D/GD/от 13.11.2017/к Договору № D/D/D/GD/от 13.11.2017 год.   Schedule 3/Приложение №3

The Parties shall immediately inform each other about all interruptions of the Radio Programs to the following contacts/О всех перерывах в предоставление услуг Стороны обязуют оперативно информировать друг друга по следующим контактам:

*Client's contact/Контакты Заказчика:*

| Tipe of cooperation/Тип взаимодействия | Employee in charge/Ответственный | Contact/Контакты |
|---|---|---|
| Emergency technical support/Оперативное взаимодействие по техническим вопросам | Technical support 24/7 Distribution Network Department /Оперативный персонал Отдел сетей распределения | ████ |
| General technical inquires/Общее взаимодействие по техническим вопросам | Roman Shumilkin Head of Distribution Networks Department/Шумилкин Роман Валериевич Начальник отдела сетей распределения | ████ |
| General contractual and financial inquires/Общее взаимодействие по договорным и финансовым вопросам | Kucherov Nikolay Specialist of Broadcasting Relations Division/Кучеров Николай Специалист отдела распространения вещания | ████ |

*Contractor's contact/Контакты Исполнителя*

| Tipe of cooperation/Тип взаимодействия | Employee in charge/Ответственный | Contact/Контакты |
|---|---|---|
| Emergency technical support/Оперативное взаимодействие по техническим вопросам | Mike Song (Washington DC) Harold Chon Master Control | ████ |
| General technical inquires/Общее взаимодействие по техническим вопросам | Harold Chon Master Control | ████ |
| General contractual and financial inquires/Общее взаимодействие по договорным и финансовым вопросам | Arnold Ferolito | ████ |

ПОДПИСИ СТОРОН/SIGNATURE OF THE PARTIES

The Contractor / Исполнитель РМ Broadcasting LLC

Ву/Подпись:

Name/ФИО: Arnold Ferolito
Title/Должность: President / Президент

The Client/Заказчик/МИА «Россия сегодня»

Ву/Подпись:

Name/ФИО: Galina Kozhina/Галина Ивановна Кожина
Title/Должность: First Deputy General Director/Первый заместитель Генерального директора
Power of attorney № 01/10-17 dated 30.12.2016/ Доверенность № 01/10-17 от 30.12.2016

